THE STATE OF OHIO, APPELLEE, *v.* BOSTON, APPELLANT.

[Cite as State *v.* Boston (1989), 46 Ohio St. 3d 108.]

(No. 88-774—Submitted April 6, 1989—Decided October 25, 1989.)

*Lynn C. Slaby,* prosecuting attorney, *Marc R. Wolff* and *Philip D. Bogdanoff,* for appellee.

*Burdon & Merlitti* and *James L. Burdon,* for appellant.

*Randall M. Dana,* public defender, *Jill E. Stone, Barbara A. Farnbacher* and *Roger Warner,* urging reversal for *amici curiae,* Ohio Public Defender Commission and Ohio Association of Criminal Defense Lawyers.

DOUGLAS, J. The serious questions obviously presented by the foregoing facts and the need for guidance and direction to our trial courts and courts of appeals in the trial and review of alleged child abuse cases cannot be better stated than by the following.

In his brief, but incisive, concurring opinion in the case at bar in the court of appeals, Presiding Judge Quillin said, in part:

"* * * A majority of the five judges of the Ninth District Court of Appeals believe that even though a child is 'incapable of receiving just impressions of the facts * * * or relating them truly' [Evid. R. 601(A)] that child can, at the same time, be capable of relating the same historical facts when it is for medical treatment or diagnosis.

"While the motives of the majority are commendable, this sort of evidential alchemy is sure to create injustices in the name of justice. *It won't take overzealous prosecutors, or vindictive*

*spouses, very long to seize upon the court's expansive interpretation of Evid. R. 803(4).*

"As can be seen from the legal, medical, and social literature, the subject of child abuse is receiving intense scrutiny. *A proper balance between the desire to convict the guilty and the need to protect the innocent is difficult to draw.* The General Assembly has taken a step in that direction with the passage of R.C. 2907.41 [effective Oct. 14, 1986] which deals with child victim's testimony.

*"The present case would provide the Ohio Supreme Court with an opportunity to provide the lower courts with needed guidance in this very troublesome area."* (Emphasis added.)

In his not as brief, but equally incisive, dissent in the court of appeals, Judge Mahoney said, in part:

"The child involved in this case was 2½ years old. The trial court did conduct a *voir dire* to determine her competency. While he found her to be competent in a private intimate interview type of setting, he could not find her competent to testify in a courtroom setting.

"Nevertheless, the trial judge permitted the child's statements and accusations to be 'admitted' into evidence through the mouths of the child's mother, two medical doctors and one psychologist. The state offered the 'evidence' for its truth, claiming it was either a hearsay exception or non-hearsay depending on the person through whom the 'evidence' was being offered.

"* * * The psychologist and one pediatrician were allowed to render their expert opinions that the child was not fantasizing nor had she been 'programmed' by anyone to make those statements. In conclusion, then the psychologist and one medical doctor determined that the child was sexually abused based upon their physical examinations, observations and the 'credible' statements of the incompetent witness.

"Query: How does the accused defend himself? Who[m] does he confront? Who is his real accuser? How does he attack the opinions of the medical doctor and psychologist which are based on unilateral interviews and examinations? Is he entitled to a separate examination of the alleged victim by doctors and psychologists of his own choosing?

"The evidentiary problems raised by cases of this nature are enormous. They are considerably less when the child victim testifies because the causation and identification evidence becomes available by direct evidence. Obviously, there is a crying need for rules of evidence dealing with child abuse cases where the child is not competent to testify. *That evidentiary change can only come from our Supreme Court and State Legislature.* In the meantime, I don't believe we should indulge ourselves in evidentiary rule machinations (noble as they may be) by attempting to fit square pegs in round holes.

"The thrust of the lead opinion is that the child's statements are admissible as an exception to the hearsay rule [*i.e.,* non-hearsay] under Evid. R. 803 (4). I cannot agree. *Evid. R. 803(4) contemplates the declarant as a person who is or could have been a competent witness.* * * *

*"The underlying basis for this exception is that the circumstantial guarantee of trustworthiness is derived from the assumption that a person will be truthful about his physical condition to a physician because of the risk of harmful treatment resulting from untruthful statements.* I cannot believe that a 2½ year old child is capable of

such rational thought and deduction. * * *

"* * *

"* * * I would permit the psychologist's opinion as to the child being sexually abused if it is based upon the child's initial response to her mother and the psychologist's observations, but not the child's purported declarations thereafter or during the interview. Likewise, the medical doctor's opinion that her physical findings were consistent with those of a child who has been sexually abused. *I would not permit the psychologist to render opinions on 'fantacizing' [sic] or 'programming'. I would further exclude opinions by either as to the credibility of the child declarant."* (Emphasis added.)

We accept the invitations of Judges Mahoney and Quillin and now move to discharge our responsibilities in this most difficult area. In doing so, we recognize that not all our readers will approve of our decision and that there is, and will be, room for argument, discussion and vigorous disagreement. We encourage such academic intercourse, keeping in mind that it is the goal of all the members of the judiciary that results are reached that are equitable and fair to both society and defendants who find themselves charged with the crime of child abuse.

## I

This case presents the court with a number of difficult and significant evidentiary and constitutional law issues raised within the context of a child abuse case. Several of the questions presented are of first impression.

Our review of appellant's case necessarily requires us to review, discuss and interpret Evid. R. 102, 601(A), 702, 703, 704, 705, 801(C), 801(D)(1)(c), 802, 803(2), 803(4) and 804(A)(2).

One of the issues confronting the court, because of the child's tender years, is whether the child is competent to testify pursuant to Evid. R. 601(A) and whether the child is unavailable to testify based on Evid. R. 804(A)(2).

Additionally, we are confronted with the question of the admissibility of the child's out-of-court statements based on Evid. R. 803(2) and 803(4) and the contention that the introduction of these statements denied the appellant his right of confrontation under the Sixth Amendment to the United States Constitution. Further, in this regard, we need to consider Evid. R. 801 and specifically Evid. R. 801(D)(1) (c).

As is typical in child abuse cases, experts were consulted in this case to ascertain whether the child had been abused. Thus, another issue before the court is whether Evid. R. 702, 703, 704 and 705 permit the introduction of expert opinions that the child had been sexually abused, that a certain person was the perpetrator, and that the child was not fantasizing and had not been programmed to lie about the abuse.

Finally, we need to look at Evid. R. 102 as it relates to interpreting the Rules of Evidence in Ohio and apply the dictates of that rule to this and other like cases in our state.

## II

Competency — Unavailability: Evid. R. 601(A); 804(A)(2)

Evid. R. 601(A) provides:

"Every person is competent to be a witness except:

"(A) Those of unsound mind, and children under ten (10) years of age who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly * * *."

At the time of trial, Cynthia was just beyond the age of three years. Pursuant to his obligation to do so, the trial judge proceeded to determine whether Cynthia was competent to testify as a witness. To make the determination, the judge held a hearing in chambers. Cynthia responded to leading questions (sometimes only by nodding) indicating that she did not have any brothers or sisters; that her companion was a lion, not a doll; that when Leo fell down, he hurt himself; that she did not need a band-aid, but Leo did; that Leo hurt his nose when he fell; that she herself gets hurt sometimes, but she did not hurt now; that she did not fall down yesterday; that her mommy works and her grandma takes care of her; that her daddy works at General Motors and also sings gospel music; that she lives with her mommy, but does not know where her daddy lives, although she visits him; that she wants her daddy to visit her; that he takes her horseback riding; that daddy makes her waffles for breakfast; that she helps daddy wash his car; that he laughs when she sprays him; and that she likes chocolate candy. Cynthia also made it clear that she did not want to talk to the judge.

After all this questioning, Cynthia was asked about the incident in question. She was asked if somebody ever hurt her and if she went to Dr. Johnson. Cynthia shook her head from side to side and refused to answer any further questions. At this point, the court concluded the examination and, after an explanatory statement, the judge said "[t]herefore, the Court is ruling the child incompetent to testify. * * *"

Later, however, when the trial judge was denying appellant's motion for a mistrial, the judge offered a further explanation of his "incompetency" ruling:

"* * * The Court's ruling on the incompetency of the child *was not that the child did not understand its obligation to tell the truth or that the child did not have the ability to comprehend and to communicate.* The Court's ruling on competency was the fact that this Court was twice, with counsel present both times, has attempted to — once in the courtroom and once in its Chambers — attempted to talk to the child. *The child has refused* in that setting to talk to the Court.

"The child seems frightened, and considering the age of the child, considering the general fact of this particular case *the Court based its incompetency or fact that the child was not allowed to be called on that and not on the ability of the child to understand its obligation to tell the truth and its ability to communicate."* (Emphasis added.)

This finding of the trial judge (and any other trial judge similarly situated) is of paramount importance. Evid. R. 601(A) contemplates that to be competent, a witness must be able to receive a just impression of the facts, be able to recollect those impressions, be capable of communicating those impressions to others, and must understand the obligation to be truthful.

If these tests are not met and the declarant really is incompetent, then it would seem to follow that any statement made by the declarant[1] to another person, who is then called upon to repeat for evidentiary purposes the declarant's statement, would also be tainted by the incompetency of untruthfulness and thus would be inadmissible hearsay.

Accordingly, where, in such cases as here, there are no substantial medical signs of abuse, it is important

---

[1] There are applicable exceptions such as an excited utterance. See Evid. R. 803(2).

that the trial judge find that the declarant is "unavailable" rather than incompetent. That is just what the trial judge found declarant to be in this case regardless of the verbiage he originally used.

Evid. R. 804(A) provides:

" 'Unavailability as a witness' includes situations in which the declarant:

"* * *

"(2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so * * *."

This persistent refusal to testify is exactly what happened with Cynthia and might well be expected to happen with other children of tender years.

Thus, the trial judge really found Cynthia unavailable *as* a witness rather than incompetent *to be* a witness. We recognize that appellant contends (admittedly with some efficacy) that such a finding is not supported by the record. However, the determination of competency (unavailability) is within the sole discretion of the trial court and absent a showing of an abuse of discretion, such a determination will not be disturbed by a reviewing court. We find no abuse of discretion here.

Child abuse is a serious and growing problem in society and presents ever-increasing problems for our courts. In most instances, the only people that know the facts regarding an incident of child abuse are the victim and the perpetrator. If, due to a child's tender years, she or he is ruled incompetent to testify, and there are no objective medical signs of abuse, the state's ability to prosecute the perpetrator is severely hampered, if not rendered impossible. A finding of unavailability, if such a finding can be honestly made, will substantially ameliorate this problem.

Further, to provide for the protection of children in Ohio, we recommend that the Rules Advisory Committee of this court and/or the General Assembly explore the possibility of amending Evid. R. 601 and R.C. 2317.01.[2] Several states have already taken some action in this regard. Such amendments could be patterned after the amendments made by the states of Missouri and Utah.[3] Under the Utah rule, "[a] child victim of sexual abuse under the age of ten is a competent witness and shall be allowed to testify without prior qualification in any judicial proceeding. The trier of fact shall determine the weight and credibility of the testimony." Utah Code Ann. 76-5-410 (1985). See Mo. Rev. Stat. 491.060(2) (1988). Such an amendment (not limited to just sexual abuse) to Evid. R. 601 would assist our courts in resolving child abuse cases.

Having resolved the competency question concerning Cynthia, we now examine and discuss the testimony admitted by the trial court based upon Cynthia's out-of-court statements.

Before doing so, we need to break

---

[2] We recognize inherent problems with the procedure. A noted commentator has stated:

"Any legislative *effort to modify the* hearsay rule or create new exceptions would be unconstitutional. See *Johnson* v. *Porter,* 14 Ohio St. 3d 58, where Ohio's Dead Man's Statute was held to be superceded by Rules 601 and 804(B)(5)." 7 Palmer, Ohio Evidence Review (Sept. 1987) 1096.

It should be further noted that Professor Palmer has, in his works, helpfully and extensively commented in this entire area of the law involving the Rules of Evidence and child abuse.

[3] We are not unaware of the recent enactment of the General Assembly, R.C. 2151.35(F), effective January 1, 1989, for use in juvenile court proceedings.

new ground concerning the use and interpretation of Evid. R. 102.

## III
### Evid. R. 102

The complete text of Fed. R. Evid. 102 states: "These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

As of 1987, thirty-one states in the union had adopted rules of evidence that follow the federal rules and the Uniform Rules of Evidence. Every one of those states, with the exception of Florida, has a rule of evidence similar to Fed. R. Evid. 102. Only one state, Ohio, rewrote Rule 102 in its entirety, deleting the phrase referring to "the promotion of growth and development of the law of evidence" and adding an additional sentence involving interpreting Ohio's Rules of Evidence to express common law. 1 Joseph, Saltzburg and Trial Evidence Committee of the American Bar Association Section of Litigation, Evidence in America, The Federal Rules in the States (1987), Chapter 2, Section 2.2.

Ohio's Evid. R. 102 states: "The purpose of these rules is to provide procedures for the adjudication of causes to the end that the truth may be ascertained and proceedings justly determined. These rules shall be construed to state the common law of Ohio unless the rule clearly indicates that a change is intended and shall not supersede substantive statutory provisions."

Accordingly, Evid. R. 102 ad-monishes the courts of Ohio to construe the Rules of Evidence in a manner consistent with the common law.

The Staff Note to Evid. R. 102 indicates that Evid. R. 102 was drafted with the purpose in mind of limiting the power of Ohio courts to modify the promulgated Rules of Evidence.[4] This is inapposite to Fed. R. Evid. 102 which makes clear that the federal rules shall be construed to *promote* the growth and development of the law of evidence. Thus, courts in every other state which have adopted rules of evidence and courts in the federal system are permitted to construe the rules of evidence broadly.

Ohio, on the other hand, based on Evid. R. 102, must construe the rules so that they follow Ohio's common law unless the rule clearly indicates that a change is intended.

## IV
### Hearsay Rule and Exceptions: Evid. R. 802, 803, 804

Hearsay consists of "* * * [out-of-court] statement[s] * * * offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). Generally, evidence concerning these out-of-court statements is barred unless the declarant testifies under circumstances where he may be cross-examined about these statements. Hearsay is not admissible, Evid. R. 802, unless one or more of the exceptions provided for in Evid. R. 802, 803 or 804 are shown to exist. We now must analyze whether Cynthia's out-of-court statements to others are admissible under any hearsay exception or, perhaps, are non-hearsay pursuant to Evid. R. 801(D). While doing so, we must keep in mind Evid. R. 102.

---

[4] The Staff Note to Evid. R. 102 states that "* * * [t]o avoid the suggestion of such expansive construction, Rule 102 deletes the language '* * * to secure * * * promotion of growth and development of the law of evidence * * *.' "

## V
### The Mother's Testimony: Evid. R. 803(2)

Appellant argues that Cynthia's alleged statement, as related by her mother, Deidre, should not have been admitted because the statement does not fall within the hearsay exception found in Evid. R. 803(2).[5] Even where the declarant *is* available, the rule allows admission of hearsay that is a "* * * statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

The rule, simply a codification of the common-law rule of evidence, was explained in *State* v. *Duncan* (1978), 53 Ohio St. 2d 215, 7 O.O. 3d 380, 373 N.E. 2d 1234, paragraph one of the syllabus:

"Testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration. (Paragraph two of the syllabus in *Potter* v. *Baker,* 162 Ohio St. 488, approved and followed.)"

Furthermore, this court in *Potter, supra,* at 500, 55 O.O. 389, at 394-395, 124 N.E. 2d 140, at 146-147, stated:

"It is elementary that the trial judge is to decide those questions of fact which must be decided in order to determine whether certain evidence is admissible. * * * In the instant case, the trial judge, in determining whether this declaration was admissible, necessarily had to decide certain questions of fact. If his decision on those questions of fact, as reflected in his ruling on the admissibility of this declaration, was a reasonable decision, an appellate court should not disturb it. In other words, we believe that the decision of the trial judge, in determining whether or not a declaration should be admissible under the spontaneous exclamations exception to the hearsay rule [excited utterance], should be sustained where such decision appears to be a reasonable one, even though the reviewing court, if sitting as a trial court, would have made a different decision. * * *"

Even though the trial judge here did not specifically state his reasons

---

[5] Evid. R. 803 states:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"* * *

"(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

for admitting the mother's testimony, we assume it was based on the excited-utterance exception of Evid. R. 803(2).

According to *Duncan, supra*, at 219-222, 7 O.O. 3d at 383-384, 373 N.E. 2d at 1237-1238, the lapse of time between the startling event and the out-of-court statement is not dispositive in the application of Evid. R. 803(2). Rather, the question is whether the declarant is still under the stress of nervous excitement from the event.

In this case, although time had elapsed between the alleged abusive act and Cynthia's statement to her mother, the mother was the first person in whom the victim confided and this occurred at the earliest opportunity. There is nothing in the record to indicate that Cynthia had engaged in reflective thought in the intervening time period. According to the record, Cynthia fell asleep in her mother's car on the return trip to her mother's home. The girl did not awaken until the middle of the night when, according to the mother, the girl awoke crying and screaming. As Deidre took Cynthia to the bathroom and placed her on the toilet, Cynthia continued to cry and was in pain when she tried to urinate. Deidre questioned Cynthia concerning her agitation and Cynthia said: "Daddy put something up my bucket. * * * [It was] [a] telephone." Deidre testified that Cynthia cried during this conversation.

We find this out-of-court statement testified to by the mother, Deidre, was properly admitted by the trial court pursuant to Evid. R. 803(2).

Considering the surprise of the assault, its shocking nature, and the age of the declarant, it is reasonable to find that Cynthia, a two-and-one-half-year-old child was still in a state of excitement at the time of her statement to her mother. Appellant's proposition of law number three is not well-taken.

## VI
### Expert Testimony:
### Evid. R. 702, 703, 704, 705

The use of expert testimony is provided for by the Rules of Evidence. Evid. R. 702[6] permits the use of testimony of an expert if the testimony will aid the trier of fact in understanding the evidence or in determining a fact in issue. The testimony offered must provide information to the factfinder which is " ' "sufficiently beyond common experience." ' " *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 131, 22 OBR 203, 209, 489 N.E. 2d 795, 803.

The rule provides that a witness qualified as an expert by knowledge, skill, experience, training or education may have her testimony presented in the form of an opinion or otherwise and it need not be just scientific or technical knowledge. The rule includes more. The phrase "other specialized knowledge" is found in the rule and, accordingly, if a person has information which has been acquired by experience, training or education which would assist the trier of fact in understanding the evidence or a fact in issue and the information is beyond common experience, such person may testify. In testifying as to an opinion or

---

[6] With regard to testimony by experts, Evid. R. 702 provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

The Staff Note to Evid. R. 702 states that the rule restates the law of Ohio as to the admissibility of testimony from expert witnesses.

inference, the expert may use facts or data perceived by her or admitted in evidence. Evid. R. 703. Even if the expert's testimony provides an opinion on an ultimate issue in a case, it is not objectionable. Evid. R. 704. After there has been a disclosure of the underlying facts or data upon which the expert bases her opinion, the expert may give her reasons for the opinion or inference drawn by responding to a hypothetical question or otherwise. Evid. R. 705. Of course, all the foregoing is subject to the relevancy requirements of Evid. R. 402 and 403.

Considering these rules, it becomes obvious that expert testimony is not limited only to those who might be trained in the fields of medicine, law, real estate, engineering or other sciences. In an appropriate case, a bank president could be an expert witness — and in child abuse cases, experts, properly qualified, might include a priest, a social worker or a teacher, any of whom might have specialized knowledge, experience and training in recognizing occurrences of child abuse.

The question that arises in this case is whether the testimony given by Dr. Asch and Dr. Lord is admissible. If such testimony is admissible, then the question becomes whether *all* or just *part* of such testimony should have been admitted.

Appellant objected at trial to the testimony of both Dr. Asch and Dr. Lord and raises various questions as to the testimony in propositions of law two and four. Likewise, *amici* submit that the frequency with which child abuse cases are being litigated requires this court to discuss and decide whether expert testimony of the type offered in this case should ever be allowed and, if so, under what conditions.

We agree with appellant and *amici* that we should directly decide these issues. A review of the cases emanating from the federal courts, the courts of our sister states and the courts of appeals of our state, as well as a review of some of the scholarly work[7] in the field, reveals a disturbing pattern of difficulty in decision-making in cases of alleged and actual child abuse.

For the moment, we decide only the issue of whether permitting Dr. Asch and Dr. Lord to testify at all was proper. There is no question in our minds that the trial judge properly permitted Dr. Asch and Dr. Lord to testify. Both, admittedly, are experts in their field. Their specialized knowledge acquired by training and experience qualified them to assist the jury in understanding the evidence and determining facts in issue. Their stated opinions and the inferences they drew were based on facts and data perceived by them and were rendered only after disclosure of the underlying facts and data. Accordingly, these experts (and like experts in other cases) fit neatly into, and satisfy the conditions of, Evid. R. 702, 703 and 705.

Appellant contends, however, that Dr. Lord based her opinion on two incidents about which Cynthia's mother and Dr. Lord disagreed. Appellant argues that without these incidents there was no factual basis for Dr. Lord's opinion as required by Evid. R. 703 and 705. Without a foundation, appellant urges, Dr. Lord's opinion should not have been admitted as evidence.

The record reflects otherwise. Dr. Lord had some of the history of the

---

[7] See, *e.g.,* Ringland, They Must Not Speak A Useless Word[:] The Case for a Children's Hearsay Exception for Ohio (1987), 14 Ohio N. U. L. Rev. 213; Ringland, Child Sex Abuse Evidence Problems (1986), 12 U. Dayton L. Rev. 27.

case given to her by the child's mother. Dr. Lord had three sessions with Cynthia and discussed the matter with her. Dr. Lord watched Cynthia play with the SAC dolls[8] in a sexually precocious manner, heard Cynthia use slang terms for genitalia, and noted signs of autonomic hyperactivity — typical of victims of child sex abuse.

Accordingly, we find that the use of expert testimony in child abuse cases is proper. Further, we find that appellant's proposition of law number four which questions the judgment of the trial court in permitting Dr. Lord to testify in this case is not well-taken and, hence, is overruled.

We now move to the more difficult questions of the specific parts of the testimony of Dr. Asch and Dr. Lord and the use of Evid. R. 803(4).

### VII
### Evid. R. 803(4)

Evid. R. 803 provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"* * *

"(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

We have already determined that it was proper for Dr. Asch and Dr. Lord, as experts, to have testified in the case against appellant. Our next task is to determine on what basis the testimony is admissible and if not all the testimony was proper, which part or parts should have been excluded.

Appellee contends, and the court of appeals concluded, that Cynthia's statements to Dr. Asch[9] and Dr. Lord[10] were admissible pursuant to Evid. R. 803(4). We have serious reservations, in this case, that this is correct and in other cases as well where the child involved is of tender years.[11]

As early as 1901, this court stated that a doctor who is treating a patient may testify about his patient's statements to him concerning the patient's "* * * condition and how * * * [the patient] suffers * * *." *Penn Co.* v. *Files* (1901), 65 Ohio St. 403, 406, 62 N.E. 1047. However, a doctor could not testify about a patient's statements made to enable the doctor to testify as an expert at trial, where the

---

[8] We recognize that many professionals criticize the use of SAC dolls in the diagnosis of sexual abuse. They assert that there is no consistent interview format associated with the use of SAC dolls. Also, they claim that there is little or no comparison data describing the response of non-abused children to SAC dolls as compared to the response of abused children. In this case, since Dr. Lord had other evidence of the alleged abuse, we need not decide whether an expert opinion based only on the child's manipulation of SAC dolls is reliable.

[9] Dr. Asch testified that the child told her: "Daddy put a telephone in here and it hurt." Cynthia pointed to her vaginal area.

[10] Dr. Lord testified that the child told her at the third session that "[h]e [the appellant] played with me. And then he put something in my bucket," which was Cynthia's term for her vaginal area.

[11] We concede that the term "child of tender years" is, at best, imprecise. Such a determination must be made on a case-by-case basis and is best left to the discretion of the trial court. Some of the cases seem to suggest that the age of six is a logical breaking point but so many variables can exist that a definitive answer is not possible.

statements were not for treatment purposes. *Id.*

Evid. R. 803(4) extends the common-law doctrine to admit statements made to a physician or medical attendant without regard to the purpose of the examination or the need for the patient's history. In other words, the patient's statements are admissible even though made to a physician consulted for the purpose of enabling the doctor to testify and even when no treatment is contemplated. Staff Note to Evid. R. 803(4).

Evid. R. 803(4), effective July 1, 1980, permits the admission of three types of patient statements: (1) medical history, (2) past or present symptoms, pain or sensations, and (3) description of the inception or general character of the cause or external source of the disease or injury. These statements, to be admissible, must be made by the patient for purposes of medical diagnosis or treatment. Furthermore, all three types of statements are admissible only where they are "* * * reasonably pertinent to diagnosis or treatment."

In *State* v. *Eastham* (1988), 39 Ohio St. 3d 307, 312, 530 N.E. 2d 409, 413 (H. Brown, J., concurring), Justice Brown noted "* * * [t]he rule's narrow limitation is based upon the belief that the declarant's subjective motive generally guarantees the statement's trustworthiness. Since the effectiveness of the treatment depends upon the accuracy of information given to the physician, the declarant is motivated to tell the truth. * * *"

The Staff Note to Evid. R. 803(4) states that: "The exception is limited to those statements made by the patient which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted."

Evid. R. 803(4) is often utilized in child abuse cases. This is so in the federal courts, the courts of sister states and the courts of this state. See *United States* v. *Nick* (C.A. 9, 1979), 604 F. 2d 1199; *United States* v. *Iron Shell* (C.A. 8, 1980), 633 F. 2d 77, certiorari denied (1981), 450 U.S. 1001; *United States* v. *Renville* (C.A. 8, 1985), 779 F. 2d 430; *Goldade* v. *State* (Wyo. 1983), 674 P. 2d 721, certiorari denied (1984), 467 U.S. 1253; *People* v. *Wilkins* (1984), 134 Mich. App. 39, 349 N.W. 2d 815; *State* v. *McCollum* (Apr. 14, 1989), Sandusky App. No. S-88-15, unreported; *State* v. *Miller* (Feb. 24, 1988), Medina App. No. 1632, unreported; *State* v. *Evans* (Apr. 27, 1987), Butler App. No. CA86-09-130, unreported; and *State* v. *Robison* (Oct. 22, 1986), Pickaway App. No. 85 CA 12, unreported. However, applying this exception to this category of cases entails inherent problems.

## A
### Child's Motive in Making the Statement

In order to comply with Evid. R. 803(4), the child's statement must have been motivated by her desire for medical diagnosis or treatment. Oftentimes the child appears too young to be able to (1) formulate her medical problem, (2) communicate this to another person, who is frequently a stranger, and (3) transmit this information for the purpose of medical diagnosis or treatment.

In an attempt to avoid the predicament of ascertaining a very young child's motivation in this situation, some Ohio courts have applied Evid. R. 803(4) and, in other jurisdictions, its pertinent counterpart as if there were no motivational component.

In *Goldade* v. *State, supra,* which involved a four-year-old sexually abused child, the Supreme Court of

Wyoming did not analyze whether the child believed that her statement was relevant to a medical diagnosis or treatment. Nevertheless, the court found that "* * * [w]e hold that there was no error committed by the trial court in admitting the statements into evidence [pursuant to Rule 803(4) of the Wyoming Rules of Evidence]."[12] *Id.* at 727.

In *United States* v. *Nick, supra,* a case involving a three-year-old victim of child abuse, the court did not analyze the child's motivation in telling the doctor about the event.[13] The court did state that "* * * [t]he child's declarations were corroborated by the doctor's examination of the child and of the child's clothing. * * *" *Id.* at 1202.

If we were to require physical corroboration of a young child's out-of-court statement, in applying Evid. R. 803(4), as the *Nick* court seemed to do, then certainly we would be strengthening the reliability of the child's statement. However, by discarding the motivational component of Evid. R. 803(4) and requiring physical corroboration, the federal appellate court has rewritten the rule — or at least very liberally construed the rule to promote the "* * * growth and development of the law of evidence * * *." Fed. R. Evid. 102.

Courts in Ohio have utilized this same reasoning. As an example, *State* v. *Miller, supra,* involved a sex-abuse victim who was seven, but functioned at the level of a three to three-and-one-half-year-old. The Ohio appellate court only analyzed whether the child's statement was reasonably pertinent to diagnosis or treatment. It did not

discuss the motive of the child in making the statement.

These cases are representative of the problem. While there are some exceptions, most of the cases cited and studied have used the hearsay exception found in Evid. R. 803(4) as the basis for admitting the testimony of experts concerning a declarant's out-of-court statements. Of course, none of the courts pause to indicate how a two-and-one-half-year-old child or other children of very tender years can be considered to be giving a medical professional specific symptoms and complaints to assist in diagnosis or treatment. The reason is obvious — as is the dilemma. The reason is that we really know that such a young child is not giving the doctor the information for the purposes required by Evid. R. 803(4). More than likely, the child does not even want to be seeing the doctor!

Likewise, the dilemma is clear. If we do not use Evid. R. 803(4) then, it would seem, none of the professional testimony (absent specific, objective, observable signs of abuse) would be admissible and persons who might be guilty of child abuse would escape prosecution. This need not be necessarily so, however, as will be described *infra.*

## B
### Non-medical Personnel

Another dilemma in applying Evid. R. 803(4) is whether a statement by a child to a psychologist, counselor, social worker, minister, etc., is admissible under the medical diagnosis or treatment exception.

In *Eastham, supra,* at 312, 530 N.E. 2d at 413, Justice Brown noted in

---

[12] Rule 803(4), W.R.E., is identical to Ohio's Evid. R. 803(4). However, Rule 102, W.R.E., is *not* identical to Ohio's Evid. R. 102. Wyoming's Rule 102 tracks Fed. R. Evid. 102.

[13] Fed. R. Evid. 803(4) is identical to Ohio's Evid. R. 803(4).

his concurrence that the Staff Note to Evid. R. 803(4) stated that the rule was derived from the assumption that a person will be truthful about his *physical* condition to a *physician* because of the risk of harmful treatment resulting from untruthful statements. The concurrence concluded that "[s]tatements made during the course of treatment for a mental health condition, however, are not imbued with the same aura of reliability [as a patient's statements to his physician]. In such situations, a patient's veracity, perception, memory or narrative ability may be impaired." *Id.* at 312, 530 N.E. 2d at 413-414.

Evid. R. 803(4) provides that the statements must be made "* * * for purposes of *medical* diagnosis or treatment * * *." (Emphasis added.) In the case before us, Dr. Lord did not "treat" Cynthia. Further, Dr. Lord is a psychologist — not a medical doctor — and the definition of "psychologist" found in R.C. 4732.01(A) does not include medical training. See, also, R.C. 4731.09. Under the circumstances, would Dr. Lord's testimony be admissible pursuant to Evid. R. 803(4)?

### C

### Identification of Perpetrator

Yet another difficulty to overcome in applying Evid. R. 803(4) in cases of abuse of very young children is whether to admit the child's out-of-court statements identifying the perpetrator. There is certainly a strong incentive to admit this testimony since these statements might be the only evidence of the identity of the perpetrator especially if the child is unavailable to testify. However, statements made during medical treatment and diagnosis as to the identity of the assailant have generally, at least in federal courts, not been admissible. See *Nick, supra,* at 1202, and *United States* v. *Iron Shell, supra,* at 84.

A judicial trend appears to be under way to soften this prohibition.[14] *United States* v. *Renville, supra,* at 437-438, found that statements identifying the perpetrator, made to a physician by a child sexually abused by a family member, are of a type physicians reasonably rely on in arriving at diagnosis and composing a course of treatment. The court claimed that the general rule banning statements of identity is based on the assumption that the injury was purely somatic, that is, an injury to the body as distinguished from the psyche. However, in child abuse cases, the information elicited from the child as to the identity of the perpetrator may be necessary to properly treat the child. Such treatment might include removing the child from the threat of future sexual abuse by the assailant or providing further psychological treatment. *Renville's* conclusion, however, rests on the underlying assumption that the victim's motivation in identifying the abuser is to aid in her treatment or diagnosis.

### D

As can be seen, applying Evid. R. 803(4) in child abuse cases involves certain inherent dilemmas. Many courts have broadly interpreted Evid. R. 803(4) or its equivalent in order to avoid these problems so that the statements of children would be ad-

---

[14] See *People* v. *Wilkins* (1984), 134 Mich. App. 39, 349 N.W. 2d 815; *Goldade* v. *State* (Wyo. 1983), 674 P. 2d 721, certiorari denied (1984), 467 U.S. 1253; *Stallnacker* v. *State* (1986), 19 Ark. App. 9, 715 S.W. 2d 883; *State* v. *Aguallo* (1986), 318 N.C. 590, 350 S.E. 2d 76; *State* v. *Vosika* (1987), 83 Ore. App. 298, 731 P. 2d 449; and *United States* v. *Renville* (C.A. 8, 1985), 779 F. 2d 430.

missible. Although it is understandable that courts would strive to admit these statements, many courts appear so result-oriented that they emasculate Evid. R. 803(4) or its federal or sister-state equivalent. Furthermore, since Evid. R. 102 requires that the Rules of Evidence comply with Ohio's common law, unless the particular rule specifically states otherwise, Ohio courts are prohibited from indulging in a broad reading of Evid. R. 803(4).

## VIII

### Evid. R. 801(D)(1)(c)

We suggest that a better way of admitting a child's statements identifying the perpetrator of child abuse can be found, under certain circumstances, in Evid. R. 801(D)(1)(c) rather than Evid. R. 803(4).

Evid. R. 801(D)(1)(c) provides:

"Statements Which Are Not Hearsay. A statement is not hearsay if:

"(1) Prior Statement by Witness. The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (c) one of identification of a person soon after perceiving him, if the circumstances demonstrate the reliability of the prior identification."

The Staff Note to Evid. R. 801(D)(1)(c) indicates that this rule extends the principle recognized in Ohio in *State* v. *Lancaster* (1971), 25 Ohio St. 2d 83, 54 O.O. 2d 222, 267 N.E. 2d 291. Paragraph five of the syllabus in *Lancaster* states:

"Prior identification of the accused may be shown by the testimony of the identifier, *or by the testimony of a third person to whom or in whose presence the identification was made,* where the identifier has testified and is available for cross-examination, not as original, independent or substantive proof of the identity of the accused as the guilty party, but as corroboration of the testimony of the identifying witness as to the identity of the accused." (Emphasis added.)

Further, the Staff Note to the rule indicates that "* * * [t]he rationale for the rule is that the perception made nearer the event is at least as likely, if not more likely, to be accurate than a subsequent identification in the courtroom. * * * [T]he trial judge [is required] to determine whether the circumstances under which the identification was made demonstrate reliability of the prior identification. * * *"

Thus, a prior identification that is found reliable by a trial judge falls outside the hearsay rule if it is shown that the child-identifier, either at trial or a hearing, had been or is subject to cross-examination under oath concerning the identification statement and the child responds willingly to questions about the previous identification. If these conditions are met *and* the judge finds the statement of prior identification reliable, then the statement of the declarant can be admitted at trial through a third person to whom or in whose presence the identification was made. See, also, R.C. 2945.55.

Accordingly, admitting a child's out-of-court identification of the perpetrator under Evid. R. 801(D)(1)(c), without the child's testimony at trial, requires the trial judge to conduct a voir dire examination of the child at which the child, under oath, is subject to cross-examination concerning her identification and responds willingly to questions about her identification.

We have extensively reviewed the facts of this case and much of the literature and scholarly work concerned with the prosecution of child abuse cases. Further, we have considered the use of Evid. R. 803(4) by so many courts called upon to decide abuse cases. Having completed such

consideration and review, we conclude that the use of Evid. R. 803(4) in child abuse cases still may have some limited validity but the rule should be used only after considering the potential conflicts that might make the use of the rule improper. In addition we suggest that in appropriate cases the same goals can be met by the proper use of Evid. R. 801(D)(1)(c).

## IX
## Right of Confrontation:
## The Sixth Amendment

Even though a child's out-of-court statements may be admissible based upon an exception to the hearsay rule, Evid. R. 803(2) or 803(4), or are admitted pursuant to the procedure outlined *supra* and the use of Evid. R. 801(D)(1)(c), there is still the constitutional issue of whether the introduction of such statements violates a defendant's right of confrontation.

The Sixth Amendment to the Constitution of the United States protects a defendant's right of confrontation. In part, the Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." The Confrontation Clause is made applicable to the states by the Fourteenth Amendment. *Pointer* v. *Texas* (1965), 380 U.S. 400, 403, 406.

The starting point for an analysis of the Confrontation Clause is the availability of a declarant to be subject to cross-examination. *California* v. *Green* (1970), 399 U.S. 149, 158. When a declarant is not available for cross-examination, hearsay statements of the declarant cannot be tested for truth. Therein lies a major problem because such statements, if accepted at face value, can be used to make a case against a defendant without ever giving the defendant a chance to show that the statements may be unreliable or were made under circumstances that are, at the time of trial, being taken out of context. The trier of fact, usually a jury, is given no opportunity to determine for themselves if the declarant is reliable or trustworthy and, accordingly, how much weight should be accorded the statements. This is a particularly thorny problem where the declarant is a very young child who has been, or allegedly has been, the victim of abuse.

To make a hard and fast rule that such statements are *per se* inadmissible would be tantamount to preventing prosecution, where other independent evidence is not present, of persons who might very well have engaged in abusing a child or children. This is not only an unadvisable course of action—it is also impermissible.

In this difficult area, we look to guidance from the United States Supreme Court. That court has found that admission of out-of-court statements by an unavailable declarant does not infringe on a defendant's right of confrontation if: (1) the proponent of the statement made a good-faith effort to produce the declarant and (2) the proposed hearsay statements have sufficient "indicia of reliability" to satisfy the underlying reasoning and policy of the hearsay exception being used. *Ohio* v. *Roberts* (1980), 448 U.S. 56, 65.[15]

---

[15] In addition, in *Roberts* (1980), 448 U.S. 56, 65, fn. 7, the court stated that a demonstration of unavailability is not always required. To support this proposition, *Roberts* cited *Dutton* v. *Evans* (1970), 400 U.S. 74, in which an unavailable co-conspirator's out-of-court statement was admitted and which found the utility of trial confrontation so remote that it did not require the prosecution to produce a seemingly available witness. More recently, in *United States* v. *Inadi* (1986), 475 U.S. 387, the court held that the Confrontation Clause and *Roberts* do not require a show-

Further, *Roberts* stands for the proposition that if an out-of-court statement falls within an exception to the hearsay rule, reliability of an out-of-court statement is presumed, but it is only a presumption and not an automatic grant.

A greater problem appears when the statement does not fall within, or is determined not to fall within, a defined exception to the hearsay rule. We have discussed this problem, *supra,* as it involves Evid. R. 803(4) and children of very tender years. Under such circumstances, *Roberts* says that to be admissible the statement must be accompanied by a "particularized guarantee of trustworthiness." *Id.* at 66.

The next problem that arises is: what constitutes a "particularized guarantee of trustworthiness"? Since this court (in conjunction with the prerogatives of the General Assembly —see Section 5, Article IV, Ohio Constitution) has not yet seen fit to adopt the equivalent of Fed. R. Evid. 803(24), the so-called "residual hearsay rule," nor has the General Assembly enacted legislation comparable to that in a number of other states to specifically deal with child hearsay problems,[16] it is necessary for us to establish guidelines as to when such out-of-court statements may be admitted and under what circumstances. It is also necessary for us to be as definitive as possible as to what constitutes a "particularized guarantee of trustworthiness."

X
The Guidelines

Having come full circle in our discussion concerning the processing of cases of persons charged with abuse (and particularly sexual abuse) of children, we now establish guidelines for the courts in Ohio to use in dealing with these cases which are appearing before us in ever-increasing numbers.[17] We establish these guidelines with the hope that the Ohio Supreme Court Rules Advisory Committee and the General Assembly of Ohio will review the entire problem and promulgate rules and statutes that will assist our courts in dealing with prosecutions in child abuse cases. In that regard, we respectfully refer these matters to the rules committee and our state's legislative body.

Accordingly, we find and now hold that in cases involving alleged child abuse:

(A) Pursuant to Evid. R. 702, 703, 704 and 705, the use of expert testimony is perfectly proper and such experts are not limited just to persons with scientific or technical knowledge but also include other persons with "specialized knowledge" gained through experience, training or education.

(B) Under proper circumstances, Evid. R. 801(D)(1)(c) may be used to admit the out-of-court statement of a child declarant identifying, to a third person, the perpetrator of alleged child abuse.

---

ing of unavailability at least for a non-testifying co-conspirator.

[16] See Ringland, *supra* (14 Ohio N. U. L. Rev.), at 218-222.

[17] According to Moore, The Medical Diagnosis and Treatment Exception to Hearsay (1986), 13 N. Ky. L. Rev. 51, 53, fn. 12, at Cincinnati Children's Hospital between the years 1975 and 1983, there was a three hundred seventy percent increase in reported child sexual abuse cases.

Further, the 1987 Franklin County Children Services "Report on Prevalence of Abuse" shows that in 1984, 1,989 abuse investigations were assigned. Of these, 786 were classified as sexual abuse. See citation in Ringland, *supra* (14 Ohio N. U. L. Rev.), at 213-214, fn. 4.

(C) With some limitations, out-of-court statements, to a third person, of a child declarant who is in court and available for cross-examination are admissible as evidence since no confrontation problem arises.

(D) Where a child is either available or unavailable and the child declarant's out-of-court statements meet the rationale and policy of a firmly rooted exception to the hearsay rule, such as Evid. R. 803(4), and it is demonstrated that a good-faith effort has been made to produce the non-testifying declarant, the out-of-court statements are admissible through a third person. The statements, however, must have an "indicia of reliability" and factors such as the age of the child, the presence of corroborative physical evidence, the relationship of the victim to the accused, the child's relationship to the persons to whom the statements are made, and the terminology used by the child are to be used in determining reliability.

(E) Where the declarant is unavailable and there has been no good-faith effort to produce the child in court, and the out-of-court statement does not comply with any hearsay exception, and there is no particularized guarantee of trustworthiness, then the child's out-of-court statement is not admissible.

(F) When a child declarant is unavailable and does not testify either at a hearing or trial and no exception to the hearsay rule is applicable and when "indicia of reliability" are absent, to satisfy the requirements of the Confrontation Clause the out-of-court statements must have a particularized "guarantee of trustworthiness." To show that there is a "guarantee of trustworthiness," the proponent of a child's out-of-court statements must prove that a good-faith effort has been made to produce the child as a witness, there must be specific evidence of abuse, either physical or emotional, *and* there must be no apparent motive to falsify the out-of-court statements.

Although an out-of-court statement satisfies the requirements of the Confrontation Clause, this does not end our inquiry. We are still faced with the problem of having a workable exception to hearsay in child abuse cases where no other exception is applicable. Until such a rule is approved, we, pursuant to our inherent powers, hold that an out-of-court statement of an allegedly abused child of tender years, including identification of a perpetrator, made to a qualified expert in child abuse, is admissible if the expert has independent evidence of physical or emotional abuse of the child, the child has no apparent motive for fabricating the statement and the child has been found unavailable after a good-faith effort to produce the child in court.

## XI
### The Testimony

We have already ruled that the testimony of Cynthia's mother, Deidre, was admissible pursuant to Evid. R. 803(2). The testimony of Dr. Asch and Dr. Lord is more difficult to analyze. In regard to expert testimony, three issues are presented in this and like cases.

First, there is the question of Dr. Asch and Dr. Lord being able to testify that, in their opinion, child abuse had occurred. Second, there is the admissibility of the experts' testimony, through the out-of-court statements of Cynthia, that the perpetrator, according to Cynthia, of the alleged abuse was "daddy"—the defendant-appellant. Finally, we must confront the question of whether anyone—expert or not—is qualified to testify by way of opinion that another person is telling the truth. It is with these issues in

mind that we review the testimony of Dr. Asch and Dr. Lord.

## A

### Testimony of Dr. Asch

Dr. Asch testified that in her opinion, Cynthia had been sexually abused. She based her opinion on an internal medical examination of Cynthia, Cynthia's statements to her and the child's medical history. As part of her testimony, Dr. Asch stated that there was a probable vaginal penetration and a possible rectal penetration. The doctor testified that "probable" meant ninety-five to ninety-nine percent certainty while "possible" meant greater than fifty percent certainty. Our issue is whether testimony of an expert that a child was sexually abused will assist the trier of fact in understanding whether abuse has in fact occurred. See Evid. R. 702 and 704.

Most jurors would not be aware, in their everyday experiences, of how sexually abused children might respond to abuse. Incest is prohibited in all or almost all cultures and the common experience of a juror may represent a less-than-adequate foundation for assessing whether a child has been sexually abused. See *State* v. *Myers* (Minn. 1984), 359 N.W. 2d 604, 609-610.

Thus, it follows that an expert's opinion testimony on whether there was sexual abuse would aid jurors in making their decision and is, therefore, admissible pursuant to Evid. R. 702 and 704. Dr. Asch's opinion testimony that Cynthia was sexually abused was properly admitted.

The question of whether Dr. Asch's testimony identifying the alleged perpetrator, through the repeating of Cynthia's out-of-court statement, is admissible becomes the most difficult question of the three for us to answer. We have previously, herein, explained our reservation about admitting Cynthia's statements, pursuant to Evid. R. 803(4). We have also suggested that a possibility for allowing admission of the statements would be Evid. R. 801(D)(1)(c), being acutely aware, however, that Cynthia was never really examined or cross-examined in court regarding her statements which implicated the alleged perpetrator. See *United States* v. *Owens* (1988), 484 U.S. ___, ___, 98 L. Ed. 2d 951, 959, 108 S. Ct. 838, 843-844.

Furthermore, we have carefully examined the reasoning and holding of *Ohio* v. *Roberts, supra.* In doing so, we have crafted guidelines which do not violate a defendant's right of confrontation and yet will permit, in most cases, admission of a child declarant's out-of-court statements which are exemplified by a particularized guarantee of trustworthiness. We find Cynthia's out-of-court statements to Dr. Asch, including the identification of the perpetrator, meet the criteria that we have established for trustworthiness and, therefore, Dr. Asch's testimony concerning Cynthia's out-of-court statement was properly admitted.

Dr. Asch was also allowed to express her opinion that Cynthia had not fantasized her abuse and that Cynthia had not been programmed to make accusations against her father. With this testimony, Dr. Asch, in effect, declared that Cynthia was truthful in her statements.

We have little difficulty in finding that the admission of this testimony was not only improper—it was egregious, prejudicial and constitutes reversible error. In *Eastham, supra,* at 312, 530 N.E. 2d at 414, Justice Brown, concurring, stated that such an opinion "* * * acted as a litmus test of the key issue in the case and infringed upon the role of the fact finder, who is

charged with making determinations of veracity and credibility. * * * In our system of justice it is the fact finder, not the so-called expert or lay witnesses, who bears the burden of assessing the credibility and veracity of witnesses."

We agree with this statement and hold that an expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant. We further find that it was error, and more than harmless, for the trial court to have permitted Dr. Asch to render an opinion on the veracity of Cynthia.

### B
### Dr. Lord's Testimony

Dr. Lord was also permitted to testify as to her opinion that Cynthia was a victim of sexual abuse, that Cynthia had told her that appellant was the perpetrator and that Cynthia was telling the truth. For the reasons we stated in analyzing Dr. Asch's testimony, we find that Dr. Lord's opinion that Cynthia had been sexually abused was properly admitted. We also find, for the reasons previously stated, that it was improper to admit Dr. Lord's testimony on the question of Cynthia's veracity.

Dr. Lord's testimony of Cynthia's out-of-court statement which identified appellant as the perpetrator did not meet one of the most important parts of the criteria we have set forth to establish a guarantee of trustworthiness. Up to this point, Dr. Lord had not testified that she had independent evidence that Cynthia had suffered emotional abuse. Absent such evidence, Dr. Lord should not be permitted to testify as to Cynthia's statement that identified appellant as the perpetrator of the alleged abuse. Upon remand, and if a new trial is commenced, this issue could be explored further with Dr. Lord.

### XII
### Conclusion

Considering the foregoing, we find that in this case appellant was not afforded a fair trial. Accordingly, we reverse the judgment of the court of appeals and remand this case to the trial court for further proceedings not inconsistent with this opinion.

*Judgment reversed and cause remanded.*

SWEENEY and H. BROWN, JJ., concur.

MOYER, C.J., concurs in the syllabus and judgment.

WRIGHT, J., concurs in part and dissents in part.

HOLMES, J., concurs in judgment.

PATTON, J., dissents.

JOHN T. PATTON, J., of the Eighth Appellate District, sitting for RESNICK, J.

H. BROWN, J., concurring. I write separately in this case to address a problem that arises when there are accusations of sexual abuse against a parent who is embroiled in a custody fight for the child.[18]

In this case, the defendant requested permission to have his expert examine the child. The court denied the request. Thus, the defense was

---

[18] In one study, it was found that forty-one percent of the cases involving sexual abuse arose in divorce and custody cases. Wakefield & Underwager, Accusations of Child Sexual Abuse (Charles C. Thomas 1988) 294.

forced to rely on the statements and opinions of experts chosen by the custodial parent. In a case like this one, in which there was a custody battle raging when the accusation was made, there is always the underlying suspicion that the accusation was linked to the custody dispute.[19]

In such situations, a rule should be adopted, I believe, which would allow another expert, not hired by the accusing parent, to examine the child. At the same time, the court must be free to fashion an order which will protect the child from obtrusive questioning. The court-appointed expert would examine the child and submit a report to the judge who would make the report available to counsel for both the state and the defendant.

I strongly endorse the majority in its determination to have the Ohio Supreme Court Rules Advisory Committee and the General Assembly review the problems associated with adjudication of child abuse cases. Put simply, the legal system is failing to (1) accommodate the child witness in the court room and (2) separate the reliable from the false with respect to sex-abuse allegations. Rules and special procedures are needed, and should evolve from a study of the problems. They cannot be hastily formulated in a legal opinion.

The failure of the judicial system to deal with child abuse cases has reached the point of crisis. A thorough and careful consideration of procedural and evidentiary rule changes should be promptly undertaken.

MOYER, C.J., concurs in the foregoing opinion.

---

[19] In this regard, see R.C. 2151.421(G) and *Hartley* v. *Hartley* (1988), 42 Ohio App. 3d 160, 537 N.E. 2d 706.

WRIGHT, J., concurring in part and dissenting in part. I concur in the syllabus and in the judgment. I agree with Parts III, IV and V and the general discussion contained in Parts VI, VII and VIII of the majority opinion. I disagree in large measure with the discussion and conclusions flowing from Part II of the plurality opinion.

As suggested by Judge Mahoney below, the record in this case does not reflect *any* effort by the trial court to determine the child's understanding or comprehension of the difference between true testimony and untrue testimony. There was no effort to determine whether Cynthia had any appreciation of the consequences of telling an untruth. It has been my experience that it is an extraordinary child that can be qualified as a witness at age five, let alone at an age of less than three years.

It has *not* been my experience that disqualification of a three- or four-year-old child necessarily leads to dismissal of a case or reluctance to prosecute it by the state. Physical evidence, and excited utterances and the like, combined with circumstantial evidence, often lead to convictions in this sort of case.

I am prepared to relax to some degree the Rules of Evidence in this area of the law but not to abandon the common-law rules as mandated by the General Assembly. The plurality opinion correctly reaches a like conclusion save for its determination as to when a child of tender years is "unavailable." Like Justices Brown, Holmes and the Chief Justice, I feel a change in rules should come from the committee appointed for this purpose.

HOLMES, J., concurring in judgment. I concur in the judgment of the majority, in that the trial court below erred in disallowing the defendant to

obtain expert testimony in order to rebut the state's testimony of Dr. Asch and Dr. Lord as to the veracity of the child involved in this case. The majority's syllabus law, however, goes too far: these expert witnesses did not express a mere opinion as to whether the child was lying; rather, the testimony was by experts possessed of knowledge, skill, experience and training in child abuse that the child had neither fantasized her abuse nor been programmed to accuse her father of abuse. Faced with such testimony, the defendant should have been given the opportunity to present rebuttal expert testimony as to these opinions.

To this extent, I concur in the thoughts of my colleague, Justice Brown. A defendant should have the opportunity to have his own expert, or one appointed by the court, examine the child for evidence of just such fantasizing or programming·on the part of others. This is not the proper subject of syllabus law, however.

This majority opinion presents its readers with a plethora of ideas for change of this state's Rules of Evidence which individually may have some merit, but when taken in their multiplicity, as one would necessarily relate to the other, or in their total context, have many faceted considerations which should not be reasonably promulgated by way of opinion. Rather, all such rule changes or interpretations should be accomplished more appropriately by way of consideration and recommendation by the Supreme Court Rules Advisory Committee established by this court.

Sexual abuse of a very young child by her own father is an especially heinous crime since the young victim is unable to protect herself from the sexual perversions of her father. This crime is a very secretive offense with the only witnesses to the crime usually being the young victim and the defendant. When the victim is found incompetent, that result should not effect the automatic dismissal of charges against the defendant. These young citizens of our state should be protected within the reasonable limits of our evidentiary rules. Recognizing that some amendments or changes are needed in the applicable rules in regard to the problems presented in this case, I would strongly suggest that all the rules discussed herein as would relate to child abuse cases be submitted to the Supreme Court Rules Advisory Committee of this court for thorough review, and that the committee report back to this court with a recommendation for appropriate action in the nature of rule promulgation, within a reasonably immediate period.

PATTON, J., dissenting. The plurality opinion engages in a detailed discussion concerning Cynthia Boston's competency and availability, the admissibility of her out-of-court statements pursuant to Evid. R. 803(4), and the application of Evid. R. 102. None of the concerns raised in that discussion ultimately leads to error, much less prejudicial error. Instead, the sole ground for reversing the court of appeals is that there was reversible error in allowing two experts to testify as to their opinion of Cynthia's credibility.[20]

Focusing solely on the issue of expert testimony on a complaining wit-

---

[20] Although I confine my dissent solely to the issue of harmless error, I am compelled to state that I cannot accept the plurality's discussion of Evid. R. 102 and 803(4). Rather than definitively resolving issues arising under those evidence rules, the plurality raises rhetorical questions concerning the rules' applicability that may

132

ness' credibility, I agree that, as a general proposition of law, an expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant.[21] However, while it was error to allow that opinion testimony, I find the error to be harmless since a review of the record clearly substantiates that even without the tainted evidence, there was overwhelming evidence to support the guilty verdict.

The plurality opinion cites Justice Brown's concurrence in *State* v. *Eastham* (1988), 39 Ohio St. 3d 307, 311, 530 N.E. 2d 409, 413, in which he concluded that it was error for a consulting school counselor to express an opinion that a child-victim's hearsay statements were truthful. I agree with Justice Brown's conclusions in *Eastham* based on the facts of that case. Those facts are inapposite to the facts of this case. The difference lies in the evidence of sexual abuse: in this case it is overwhelming; in *Eastham,* it was not.

In *Eastham,* the state called a consulting counselor at the child-victim's school as a witness. The counselor possessed a master's degree in counseling psychology, but was not licensed as a psychologist and was not trained to conduct psychological testing. *Id.* at 311, 530 N.E. 2d at 413.

The counselor met with the victim several times to assess her developmental abilities as part of an application for disability benefits. *Id.*

The concurrence in *Eastham* made it clear that the counselor's testimony served to enhance the victim's "equivocal" testimony. *Id.* at 312, 530 N.E. 2d at 414. Apparently, his opinion concerning the victim's veracity was the only evidence besides the victim's and tended to bolster a weak case. On that evidence, it is doubtful that the error could be deemed harmless, since there was not one iota of physical evidence of sexual abuse to support the child's equivocal testimony.

The facts of this case compel the result opposite to that in *Eastham.* No one has seriously questioned that Cynthia was the object of sexual abuse. The ultimate question is whether defendant perpetrated those acts of abuse during the July 26-27, 1986 weekend visitation with Cynthia. I find substantial evidence to support the jury's verdict without the testimony concerning Cynthia's credibility.

It is important to compare Cynthia's out-of-court statements to the physical and emotional evidence of abuse. On three separate occasions, Cynthia stated with unerring consistency to the effect that her father, the defendant, had "put something in

---

serve to confuse, instead of aid, our lower courts. I would admit Cynthia's out-of-court statements pursuant to Evid. R. 803(4) and affirm the analysis of the court of appeals.

[21] I do not read the plurality opinion to foreclose expert testimony concerning the *typical* victim of child sexual abuse. The plurality concludes that Dr. Lord had not testified to independent evidence that Cynthia suffered emotional abuse. While I differ with this conclusion, see *infra,* I agree that Dr. Lord's opinion that Cynthia had

not been programmed to give autonomic responses was inadmissible.

The distinctions between evidence concerning a typical child abuse victim and a particular child abuse victim are subtle. Cf. *State* v. *Buell* (1986), 22 Ohio St. 3d 124, 22 OBR 203, 489 N.E. 2d 795, paragraphs one and two of the syllabus. While experts may testify that it is their opinion that a child has been abused, such opinions implicitly assert a belief in the child's story. Such an opinion, however, is only an indirect comment on truthfulness and is therefore admissible.

my bucket [vagina]." The evidence of physical abuse corroborated these statements.

Cynthia first exclaimed the abuse to her mother the night following her visitation. The mother found redness around Cynthia's vagina and anus. Cynthia was experiencing obvious genital discomfort at the time.

When Cynthia was being examined by Dr. Asch, she pointed to her vagina and stated that her father had put a telephone in her and it hurt. Dr. Asch's examination uncovered a "slight whitish discharge and erythema [abnormal redness] of the labia," along with redness of the labia minora. The hymenal opening was of a size typically found in girls aged ten to twelve years. There was penetrating trauma visible and scar tissue that was *at least two weeks old*. Thus, there was the clear inference that the hymenal scarring could relate back to the July 26-27 weekend visitation.[22]

During Cynthia's sessions with Dr. Lord, she stated that "he [defendant] put something in my bucket." As she said this, Cynthia pointed at the penis on the SAC doll that Dr. Lord was utilizing during the session. Dr. Lord also testified that Cynthia, when handling the SAC dolls, inserted the penis of the male doll into the vagina of the female doll in a manner that indicated to her that Cynthia had been exposed to sexual abuse. Cynthia used the SAC dolls to demonstrate other manipulations of sexual conduct as well. Finally, Dr. Lord testified that Cynthia exhibited behavioral responses to various stimuli that were indicative of sexual abuse.

The obvious import of this physical and emotional evidence is that it tended to corroborate Cynthia's out-of-court statements. Indeed, the plurality opinion expressly recognizes this evidence of abuse as constituting the requisite guarantees of trustworthiness that permitted the trial court to admit Cynthia's declaration due to her unavailability. More importantly, it constitutes independent evidence of sexual abuse that was at least as persuasive as the expert's opinion regarding Cynthia's credibility.

Other courts have concluded that improper opinion testimony may be harmless if there is other evidence of abuse. Compare *Townsend* v. *State* (Nev. 1987), 734 P. 2d 705 (erroneously permitting expert to detail reasons for conclusions she reached regarding alleged victim's truthfulness harmless given overwhelming evidence of guilt), and *United States* v. *Provost* (C.A. 8, 1989), 875 F. 2d 172 (expert's comment that might be construed as an implied statement of her belief that victim was telling the truth was harmless in view of testimony as a whole and context in which it was given), with *State* v. *Rimmasch* (Utah 1989), 775 P. 2d 388 (erroneous admission of expert appraisal of complaining witness found reversible error where there was no corroborative physical evidence and victim's version of facts was bolstered by challenged testimony), and *State* v. *Holloway* (1986), 82 N.C. App. 586, 347 S.E. 2d 72 (reversible error to admit testimony relating to victim's truthfulness where state's case depended almost entirely upon credibility of victim and child was not physically

---

[22] Dr. Asch's findings were not inconsistent with those of Dr. Johnson, the child's pediatrician. Dr. Johnson readily admitted that the child's refusal to be examined prevented him from performing an internal examination. He was simply unable to see that which the child allowed Dr. Asch to see. Therefore, the absence of any internal findings in Dr. Johnson's examination lacks significance.

injured). Following these courts, and Justice Brown's concurrence in *Eastham, supra,* I would find that the admission of testimony relating to Cynthia's credibility was harmless error. To hold otherwise weakens our consistent application of the harmless error doctrine. Since the evidence of abuse was so overwhelming, I would affirm the judgment below.