DISSENTING OPINION
On this appeal from an order of Judge Lillian J. Greene, I respectfully dissent from the majority opinion because it is contrary to both the facts of record and law of this state. Because the majority chooses to provide only a cursory review of the facts, I provide more substance.
In December 1995, following the allegations of his eleven-year-old daughter, Curtis Withrow, then 34 years old, was indicted on three counts of rape, one count of felonious sexual penetration, and four counts of gross sexual imposition. On March 5, 1996, Withrow withdrew his plea of not guilty and entered a guilty plea to one count of rape without any allegations of force or threat of force. He waived a referral to probation and was immediately sentenced to a term of 7 to 25 years imprisonment.
On July 29, 1998, Withrow's lawyer filed a Crim.R. 32.1 motion to withdraw the guilty plea, asserting that Withrow had always maintained his innocence but pleaded guilty to shelter his daughter, who had demonstrated suicidal tendencies for reasons unrelated to this action, from the affects of a lengthy trial and to avoid a possible sentence of two life terms. In support of his motion, he attached a copy of a November 14, 1996 letter of apology written to him by his daughter, her affidavit, the affidavit of her 1996 counselor, Bobbi Gallagher, and a letter addressed to the judge and signed by her mother, Withrow's ex-wife, Linda Withrow. The State did not object at any time to the unauthenticated letters.
In the first affidavit, the girl averred that, during a counseling session at the Westhaven Youth Shelter on November 14, 1996, the same day she wrote the letter of apology to her father, she admitted to Gallagher that she had fabricated the allegations of sexual abuse for his ill treatment of my mother and brother[,] and for my father's disapproval of my talking to and hanging around classmates that he did not approve of which lead to a major argument the day I made the allegations. She also averred that she lied to stop his physical violence against her.
Gallagher, a licensed independent social worker, indicated in her affidavit that she did not encourage or pressure the girl into recanting her allegations against Withrow but was counseling her at the time she penned the apology letter to her father. In that letter, attached to Withrow's brief, the girl explained to Withrow that she fabricated the allegations of sexual abuse because she did not want him to live with them anymore because of the verbal and physical abuse he inflicted on her mother and brother. Gallagher stated she was surprised to see that the contents of the letter were not consistent with the girl's original accusations, and based upon that wrote to the prosecutor and advised him of the girl's revelation.
The type-written letter addressed to the judge from Linda Withrow explained that she pushed hard for Withrow's prosecution, because her own pain from childhood sexual abuse surfaced when her daughter made the allegation. She denied that she pressured her daughter into recanting her accusations but when the truth came out that her daughter had lied to her, we were able to work through her deceit [and] we have become much closer and happier. The State did not object to or move to strike the letter.
The State in its response provided nothing to support its factual allegations. Both Withrow's brief supporting his motion and the State's responsive brief assert that a February 28, 1995 examination at Fairview General Hospital revealed that the girl's hymen was intact and there was no evidence of vaginal trauma or lacerations. While the State did not make the hospital examination report part of the record, its responsive brief further appears to quote from the report, indicating that the lack of evidence of vaginal trauma or lacerations is consistent with the fact that the patient's last assault was on the 13th of the month approximately 12 days ago. Its responsive brief also appears to recount allegations contained in the police report which, like the hospital examination report, is not part of the record.
At the February 19, 1999 hearing on the motion to withdraw his guilty plea, Withrow's lawyer presented only the testimony of Dr. Deborah A. Quirky. It was stipulated that Dr. Koricke satisfied the requirements of an expert witness under subdivisions (A) and (B) of Evid.R. 702, but the State disputed her expertise pursuant to subdivision (C).
Koricke, board certified as a forensic examiner, senior disability analyst and specialist in alcohol and drug addiction, had treated over 500 alleged victims of sexual assault and had testified on occasion in domestic relations court to give an opinion regarding children's allegations of sexual abuse. In the present case, she had interviewed the girl during one, four-hour long visit about a month before the February 19, 1999 hearing.
The girl told Koricke that her father had been physically and verbally abusive on a number of occasions to her, her mother and brother.[1] Because much of this abuse was tied to Withrow's alcohol abuse, she, her mother and brother often left home and stayed in a shelter or motel for the evening. The girl also told Koricke that her mother had earlier discussed sexual abuse with her and her brother, i.e., the difference between good touching and bad touching, and had asked them whether anyone had touched them in such a manner. Koricke found this to be significant because it related to the reasons why she accused Withrow of sexually abusing her.
Koricke explained that all members of the family, had a problematic relationship with Withrow and that just before she made the allegations, the girl had a number of arguments with her father about a friend of whom he did not approve. According to Koricke, the girl told her she wanted all the arguing to stop, she did not want Withrow to harm her, her mother or brother anymore, and she wanted him out of the house. Thereafter, the idea of accusing her father of sexual abuse popped into her head because she thought that if she made such an allegation, he would be removed from the house and her life would be much more peaceful.
 She said that the mother, because she was so tuned in to sexual abuse herself as being a victim as a child, was, I hate to say, all for it, because the mother wanted to hear that this happened, she was one-hundred percent supportive * * * of the child making these allegations.
The victim recanted her story in November 1996, about a year after Withrow was incarcerated.
To aid her diagnosis Koricke had her assistant administer a Millon Adolescent Clinical Inventory test (MACI) which the girl had some problems completing. In some instances, she gave both a true and false answer to the same question and, as a result, the test did not meet the standards for further scoring. Koricke admitted that a valid MACI would have helped her determine the victim's veracity but when she considered in the context of the girl's several attempts at suicide, psychiatric hospital stays, long period of residential treatment, and continued treatment since the victim made the allegations, Koricke took her inability to answer that inventory as indicative of her level of distress. On cross-examination, Koricke said that she did not administer two other psychological tests, the MMPI (Minnesota Multiphasic Personality Inventory) and the PAI (Personality Assessment Inventory), because they did not necessarily give valid results for a person who, like the girl, was 15 years old.
Koricke indicated that one primary diagnosis a victim of sexual abuse or assault may exhibit is that of post-traumatic stress disorder but the girl did not exhibit the symptoms associated with that disorder; rather, she exhibited symptoms of major depression. Based upon information obtained from both the girl and her mother, she also exhibited vegetative dischannelling, disturbances of her eating habits and sleeping patterns; her school work and attendance also suffered. According to Korike, the girl attributed her depression to guilt over sending her father to prison for acts he did not commit.
On cross-examination, Koricke indicated that children sometimes would recant allegations of abuse; she was very cautious when a child recanted because, in her experience, the child may have received pressure from a parent to preserve the relationship. In the present case, however, the girl had indicated to her that she was as afraid of her father now as she was before he was incarcerated, especially in light of the false accusations. Koricke found this significant, in addition to the mother's initial attitude about the abuse, since it showed less probability of outside pressure from either parent to recant accusations. Koricke agreed with the prosecutor's assessment that, in her opinion, based upon her clinical experience, years in the field, and work with alleged victims of sexual abuse, the girl's recantation was valid.
In a written opinion and journal entry dated March 25, 1999, the judge noted that Withrow presented Koricke for the sole purpose of determining the veracity of the recantation. Upon cross-examination, the journal entry continued, the prosecution elicited that: 1) no valid psychological tests were obtained from [the] victim; 2) no prior treatment of records of the victim were reviewed by the witness; and 3) opinion as to credibility is not admissible. Considering her testimony, the judge found that Koricke did not meet the criteria for qualification as an expert under Evid. Rule 702.
In any event, the judge considered the affidavits, case file,[2] and record, and noted the following:
 (1) the undue delay of almost 2 / years between the recantation and the filing of the Motion affects the movant's credibility;
 (2) recanting is not unusual particularly in cases where a child has been raped by a parent and incarceration and divorce subsequently occur;
 (3) the recantation is questionable given the victim's continued psychological and emotional state;
 (4) there is no evidence which indicates that the victim's psychological problems resulted from any incident other than the sexual abuse suffered herein given that the treatment began around the time the incidents were reported to police;
 (5) the victim, who is now 15 years old, did not testify at the hearing although she was present in Court;
 (6) the victim, at age 4 or 5, had told her mother of touching by the Defendant and further, that the conduct resumed when she was ten (10) years old, giving rise to the instant charges;
 (7) Crim. Rule 11 was fully complied with before the taking and entry of the plea;
 (8) Defendant faced life imprisonment if convicted of Rape as indicated;
 (9) the plea agreement reached deleted the force language, but not the age of the child, from the indictment and called for a 7-25 year non-probationable prison term; and
 10) the possibility of harsher penalties is a consideration all defendants entertain during plea negotiations.
Withrow's first assignment of error states:
 THE TRIAL COURT ERRED FOR FAILING TO QUALIFY DEFENDANT-APPELLANT'S PSYCHOLOGIST-WITNESS AS AN EXPERT UNDER OHIO RULES OF EVIDENCE, RULE 702.
Rather than apply recent Supreme Court precedent, the majority has now formulated a new rule of law: i.e., An expert may testify only regarding matters to which the expert herself has perceived as a result of valid scientific, technical or other specialized testing which she herself has administered — but only if that evidence has been admitted into the record at trial. In one fell swoop, the majority has eviscerated recent Supreme Court precedent interpreting both Evid.R. 702 and Evid.R. 703.
Evid.R. 702 provides as follows:
 A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 (1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 (2) The design of the procedure, test, or experiment reliably implements the theory;
 (3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.
[Emphasis added.]
When determining whether an expert's testimony is admissible under Evid.R. 702(C), a judge must focus upon reliability, i.e.,
whether the opinion is based upon scientifically valid principles, not whether the expert's conclusions are correct or whether the testimony satisfies the proponent's burden of proof * * *. Millerv. Bike Athletic Co. (1998), 80 Ohio St.3d 607, 687 N.E.2d 735, paragraph one of the syllabus. When evaluating the reliability of scientific evidence, a judge considers several factors: (1) whether the theory or technique has been tested; (2) whether it has be subjected to peer review; (3) whether there is a known or potential rate of error; and (4) whether the methodology has gained general acceptance. Id. at 611, citing Daubert v. Merrell DowPharmaceuticals, Inc. (1993), 509 U.S. 579, 593-594,113 S.Ct. 2786, 2797, 125 L.Ed.2d 469. None of these factors, however, is a determinative prerequisite to admissibility. State v. Nemeth
(1998), 82 Ohio St.3d 202, 211, 694 N.E.2d 1332. In addition, [t]he reliability requirement in Evid.R. 702 is a threshold determination that should focus on a particular type of scientific evidence, not the truth or falsity of an alleged scientific fact or truth. Id.; cf. Miller, 80 Ohio St.3d at 613-614 (In reviewing a summary judgment motion, a trial court should not reject one expert opinion or another simply because it believes one theory over the other.)
In her opinion, the judge first noted that no valid psychological tests were obtained from [the] victim and that no prior treatment or records of the victim were reviewed by the witness. However, Koricke testified that she based her conclusion that the victim had not been sexually abused upon her clinical experience, years of training, and treatment of other alleged victims.
In State v. Stowers (1998), 81 Ohio St.3d 260, 690 N.E.2d 881, the defendant argued that the state's expert should not have testified about the behavior of child sexual abuse victims because the psychiatric profession did not officially recognize child sexual abuse syndrome and, therefore, the expert's testimony lacked a scientific basis. The Supreme Court rejected this argument, quoting State v. Boston (1989), 46 Ohio St.3d 108, 119,545 N.E.2d 1220: a witness qualified as an expert by knowledge, skill experience, training or education may have her testimony presented in the form of an opinion or otherwise and it need not be justscientific or technical knowledge. Stowers, 81 Ohio St.3d at 262. Applying that rule here, the conclusion that the girl could not complete a psychological test or that the psychological expert did not review earlier treatment records cannot form the basis for disqualifying an expert's testimony under Evid.R. 702(C) because those factors do not go to the validity of scientific principles.
See id. at 261-262. Rather, those factors go to the weight of the evidence or the credibility of the expert. See Nemeth,82 Ohio St.3d at 210 (general scientific acceptance or agreement in scientific community regarding scientific opinion not ultimately determinative of reliability requirement of Evid.R. 702(C); they go to credibility of conclusion and the relative weight it should enjoy by trier of fact). The majority's conclusion that the expert's testimony is inadmissible under Evid.R. 702(C) because the girl could not successfully complete a standardized psychological test defies the body of law interpreting that rule.
Finally, the judge also concluded that opinion as to credibility is not admissible. While that may be a correct summation of the syllabus in Boston, [a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant, such a determination goes to admissibility underBoston, 46 Ohio St.3d at 128-129, not reliability under Evid.R. 702(C).
Moreover, the conclusion that Withrow offered the testimony for the sole purpose of determining the veracity of the recantation is glaringly incorrect. Rather, the State — not Withrow — elicited information that Koricke believed the girl's recantation to be truthful. In other words, the State offered the testimony of the girl's truthfulness for the sole purpose of determining veracity. In any event, the rule in Boston quoted above does not proscribe testimony which is additional support for the truth of the facts testified to by the child. Id. at 263; seeNemeth, 82 Ohio St.3d at 211.
In the present case, while the State elicited Koricke's opinion of an accusor's veracity, her testimony also supported the averments in the girl's unobjected-to-affidavit, i.e., that, in her opinion, the abuse did not occur. Such testimony is admissible. See Sowers, 81 Ohio St.3d at 261 (An expert witness's testimony that the behavior of an alleged child victim of sexual abuse is consistent with behavior observed in sexually abused children is admissible under the Ohio Rules of Evidence.). As a result, the expert should not have been disqualified and her testimony completely discounted.
Turning now to Evid.R. 703, the majority cites Russell v.Corbin (Dec. 9, 199), Cuyahoga App. Nos. 74939, 75236, unreported, for the proposition that Evid.R. 703 provides that opinion testimony by an expert must be based on facts or data `perceived by him or admitted into evidence at the hearing. [Emphasis added.]'[3]
Applying this rule, it concludes that the expert also conceded that her opinion was based on information provided by the victim and her mother, not on facts or data perceived by her or admittedinto evidence at the hearing as required under Evid.R. 703.
Contrary to the majority's assertion, Evid.R. 703 does not require that information upon which the expert relies to form the basis of her opinion to be admitted into evidence. State v. Solomon (1991),59 Ohio St.3d 124, 570 N.E.2d 1118, syllabus (specifically rejecting argument that testimony of the two doctors was properly stricken because they, in part, based their opinions on reports not in evidence). The text of Evid.R. 703 provides: The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing. Where an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied. Id. Evid.R. 703 is written in the disjunctive. Opinions may be based on perceptions or facts or data admitted in evidence. Id. at 126. Because Koricke had a four-hour meeting with the victim, the facts or data upon which she based her opinion was perceived by her and, therefore, satisfied the requirements of Evid.R. 703. As I noted earlier, the rule of law espoused by the majority is contrary to the law of this state.
Because the judge incorrectly excluded consideration Koricke's expert testimony, I would remand for reconsideration of Withrow's motion in light of the evidence presented at the hearing and all of the affidavits and letters that accompanied his brief in support and to which the State did not object.
I also must point out that, under the facts presented here, I disagree with the majority's contention that an unexplained gap between the November 1996, letter of recantation and Withrow's July 1998 motion was a valid basis for denying it. In support, the majority's author cites his own opinion in State v. Wynn (1998), 131 Ohio App.3d 729, 131 N.E.2d 725, despite divergent fact patterns between Wynn and Withrow. Wynn's claim was ineffective assistance of counsel in failing to interview two witnesses who could have supported his defense — a fact that Wynn knew and should have utilized, according to Judge Corrigan, earlier than twenty-two months after sentencing. In the instant case, an unverified letter of recantation was, by itself, useless. When he obtained the two affidavits and letter of Linda Withrow in May and June 1998, Withrow's July, 1998 motion was not untimely.
[1] Koricke's report was not admitted into evidence at the hearing or otherwise made a part of the record.
[2] The prosecutor's case file was neither offered nor admitted into evidence.
[3] That case, in turn, cited no authority for that proposition of law.