DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant-delinquent Adam Spence has appealed a judgment of the Lorain County Court of Common Pleas, Juvenile Division, by which he was adjudicated delinquent. This Court affirms.
Spence was charged with one count of rape, in violation of R.C.2907.02(A)(2). He was a juvenile at the time. After an adjudicatory hearing, the trial court found Spence delinquent by reason of rape, and imposed a suspended commitment to the Ohio Department of Youth Services, probation, and counseling.
Spence has timely appealed, and has asserted four assignments of error for review.
 I. ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF THE JUVENILE-DELINQUENT, BECAUSE THE TRIAL COURT'S ADJUDICATION OF DELINQUENT [sic] IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his first assignment of error, Spence avers that the trial court's delinquency adjudication is against the manifest weight of the evidence.[1] Spence specifically contends that the veracity of the purported victim's testimony is so questionable that an adjudication based primarily on that testimony creates a manifest miscarriage of justice. This Court disagrees.
When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. The discretionary power to grant a new trial should be exercised only in exceptional cases where the evidence weighs heavily against the conviction. Id.
Spence was adjudicated delinquent by reason of rape, in violation of R.C. 2907.02(A)(2), which states that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.01(A) defines "sexual conduct" as:
 vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
The victim testified that while she was sitting on a couch in her basement, Spence tried to kiss her. She testified that she refused, telling him "no," but that Spence "would not take no for an answer." She said then Spence removed her pants against her will, held her down and removed his pants, and had sexual intercourse with her. The victim testified that she tried to get away, but that she did not scream. She explained that she was afraid to scream because she did not want to wake her parents; she had invited Spence over despite her parents' rule forbidding her from having boys to the house. The victim testified that the day after the rape Spence threatened to break her neck in twenty different places if she told anyone what happened.
Katie, the victim's friend who spent the day after the rape with the victim, testified that on the day after the victim appeared quiet and withdrawn. Katie also testified that she heard Spence tell the victim that he would break the victim's neck in twenty different places.
In his appellate brief, Spence goes to great lengths to set forth testimony adduced at the hearing which show inconsistencies in the victim's testimony. He further asserts that support for his contention that the rape never occurred can be drawn from the fact that the victim did not shower right after her attack, but rather waited many hours after the incident. He further insists that proof that his delinquency adjudication is against the manifest weight of the evidence can be found in the fact that the "state failed to produce any medical or psychological expert testimony[,]" and in the failure of the victim to seek medical treatment or psychological counseling.
This Court will not reverse a conviction or delinquency adjudication based on inconsistencies in the victim's statements because "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus; State v. Jackson
(1993), 86 Ohio App.3d 29, 33. This is not the exceptional case where the evidence weighs heavily against the adjudication. Therefore, this Court cannot say that Spence's delinquency adjudication has created a manifest miscarriage of justice.
The first assignment of error is overruled.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF THE JUVENILE-APPELLANT AND ABUSED ITS DISCRETION BY QUALIFYING A POLICE DETECTIVE AS AN EXPERT TO GIVE PSYCHOLOGICAL EVIDENCE FOR WHICH HE WAS NOT QUALIFIED.
 ASSIGNMENT OF ERROR III THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF THE JUVENILE-APPELLANT AND ABUSED ITS DISCRETION BY PERMITTING TESTIMONY OF THE INVESTIGATING DETECTIVE, WHO HAD BEEN STIPULATED TO AND ADMITTED AS AN EXPERT IN INVESTIGATING SEX ABUSE CRIMES, TO OFFER AN OPINION AS TO THE VERACITY OF THE STATEMENTS OF A CHILD DECLARANT.
As Spence's second and third assignments of error raise similar issues of law and fact, they will be addressed together.
In his second assignment of error, Spence asserts that the trial court committed reversible erred in permitting Detective Dan Fairbanks to testify as a psychological expert. Spence specifically takes issue with the detective's testimony "as to the behaviors and motivations of children regarding their veracity or lack thereof, specifically in situations of trauma, such as rape." This Court finds such contentions meritless.
Spence devotes much of his argument to setting forth the law on qualifying an expert to testify, and then classifies Detective Fairbanks' testimony as psychological expert testimony. This characterization is erroneous. The record reveals that Spence stipulated to Detective Fairbanks' qualifications as an expert in investigating sex abuse cases, and that Detective Fairbanks testified based on his experience in investigating sex abuse cases.
In his third assignment of error, Spence contends that Detective Fairbanks' testimony violated the rule set forth in State v. Boston
(1989), 46 Ohio St.3d 108, prohibiting an expert from giving an opinion as to the veracity of a child's statements. Although Spence has properly reproduced the Boston rule in his brief, again he has mischaracterized Detective Fairbanks' testimony. Detective Fairbanks did not testify as to the veracity of the victim's statements. Rather, Detective Fairbanks testified as to whether the victim's testimony was consistent with his experience in sex abuse cases:
 [PROSECUTOR]: Dealing with cases when children are involved in sex abuse cases, was [the victim's] behavior rational to you or typical or how can you explain that?
 [FAIRBANKS]: Well, from the time she told me, when I met her again it was so much later, I would say it was probably typical.
 [PROSECUTOR]: Okay. Do children sometimes change their stories in these situation?
[FAIRBANKS]: Yes, they do.
 PROSECUTOR: So was [the victim's] behavior normal in these type of situations?
 [FAIRBANKS]: I would say it's not out of the ordinary —
[PROSECUTOR]: Okay.
 [FAIRBANKS]: — for children to change their stories, especially older children.
[PROSECUTOR]: Well, there is a lot of reasons.
 [DEFENSE COUNSEL]: Objection, Your Honor. I don't think he's qualified to know. He is not a child psychologist, Your Honor, we are getting outside the scope of what his expertise is.
 [PROSECUTOR]: He's already been qualified as an expert for investigating sex abuse cases.
 [DEFENSE COUNSEL]: You're asking him if children lie, why they do it.
 [THE COURT]: I don't believe that was the question. It's overruled. You may answer.
[FAIRBANKS]: Could you repeat that?
* * *
 [FAIRBANKS]: There are several reasons why children may change their stories. It may be that in this case, told the story because she was afraid to tell her parents that this happened in their own house. I have had children lie because they didn't want anything to happen, you know, not tell anybody ever. You know, and maybe find a disclosure from some other reason, telling a friend at school years later, things like that.
 Counselors get into counseling for something else, problems at home, drug counseling, alcohol counseling and all of the sudden blurt out that they were sexually abused. There is a number of reasons why kids may not tell right away.
 [PROSECUTOR]: Okay. What what were your impressions of what [the victim] was telling you?
[THE COURT]: Not for purposes of truthfulness.
[PROSECUTOR]: As an investigator —
 [THE COURT]: You cannot, however, you're limited, you cannot comment with regard to her truthfulness. You can comment if her actions were consistent with actions that you are familiar with, but you cannot comment on her truthfulness or untruthfulness in your dealings with her.
 [FAIRBANKS]: Then what I would say is that she had typical reaction to a lot of the cases I investigate.
Accordingly, this Court finds no error. The second and third assignments of error are overruled.
 ASSIGNMENT OF ERROR IV THE JUVENILE-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
Spence pleads this Court to reverse his delinquency adjudication based upon ineffective assistance of trial counsel. He argues that he was prejudiced by his counsel's failure to: call an expert witness; call other witnesses; object to the prosecutor's questions concerning his mental health issues; file pretrial motions; complete discovery; rebut the state's claim that a threat of force was made; move for a judgment of acquittal at the close of the state's case; and by his counsel's stipulation to qualify the police detective as an expert.
A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, 693. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 80 L.Ed.2d at 695. The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v. Smith (1985), 17 Ohio St.3d 98, 100. Furthermore, an attorney properly licensed in Ohio is presumed competent. State v. Lott (1990), 51 Ohio St.3d 160, 174.
Spence asserts that his trial counsel was ineffective due to his failure to call an expert witness on the behavioral characteristics typical of a rape victim and his trial counsel's failure to call other unspecified witnesses. This Court has previously held that "[d]ecisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics." State v. Miller (1988), 43 Ohio App.3d 44,45. Moreover, this Court is not in a position to second-guess either defense counsel's tactical decisions or what knowledge Spence may have provided to his trial counsel concerning the incident at issue. See, generally, State v. Cornwell (1999), 86 Ohio St.3d 560, 569. Furthermore, Spence did not present any evidence as to "whether such witnesses were available or what pertinent facts might have been garnered by such action." In re Wise (1994), 96 Ohio App.3d 619, 628. Hence, this Court cannot conclude that his counsel was ineffective in this respect.
Spence next avers that his trial counsel was ineffective for failing to object to the State's questions regarding his mental health status and the treatment of what apparently constitutes a bipolar disorder. However, upon review of the record, it is apparent that Spence's own counsel opened the door to this line of questioning. Specifically, Spence's trial counsel asked:
[DEFENSE COUNSEL]: Are you under medication?
[SPENCE]: Yes, I am.
[DEFENSE COUNSEL]: What type of medication?
 [SPENCE]: Seraquil, it is an antipsychotic and at the time it was a hundred milligrams. I'm not sure if I was on Dexedrine at the time, but I am now.
 [DEFENSE COUNSEL]: Uh-huh. And why are you prescribed these medications?
 [SPENCE]: The Seraquil is for psychotic disorder and the Dexedrine is basically a safer form of Ritalin for school.
Spence's trial counsel was apparently bringing the issue of Spence's medical problems to the attention of the finder of fact. His trial counsel also sought to use Spence's medical problems to explain why Spence did not return home on the night in question. Further, by engaging in this line of questioning on direct examination, Spence's trial counsel opened the door to the prosecutor's questions on cross-examination, making any objection on this issue fruitless. See State v. Pollard (1970),21 Ohio St.2d 171, 174. This Court concludes that his trial counsel's decision to pursue this issue, and thereby open the door to the state's questions on cross-examination, was within the realm of trial strategy, which this Court declines to second guess. As any objection to the prosecution's questions on cross-examination would have been properly overruled, this Court can not conclude that Spence's trial counsel was ineffective in failing to tender an objection to these questions.
Next, Spence makes a blanket assertion that his counsel was ineffective for failing to file unspecified pretrial motions and in failing to fully investigate the case prior to trial. Spence has not indicated what pretrial motions would have been appropriate or how they would have aided in his defense. Therefore, this Court is unable to find Spence's counsel deficient in that respect, nor can we adduce any prejudice due to the lack of such unspecified motions.
Spence avers that his trial counsel did not identify or interview witnesses prior to trial because she stated, upon beginning cross-examination of several of the witnesses: "We met this morning, correct?" or words of similar import. However, the record discloses that Spence's trial counsel made a discovery request on May 25, 1999, pursuant to Crim.R. 16.[2] The state responded with the names of the witnesses it subsequently called at trial, as well several other witnesses. Further, discovery was had by Spence's trial counsel in regard to written statements of the witnesses, police reports, and evidence favorable to the defense contained in the police reports. The statements made by Spence's trial counsel at trial may indicate that she did meet with the witnesses earlier on the day of trial but do not necessarily demonstrate that she never spoke with, met, or read the statements of those witnesses at other points in her trial preparation. In fact, Spence's trial counsel's discovery request contradicts that assertion. Hence, this Court can not conclude that Spence's trial counsel's performance fell below that envisaged in the Sixth Amendment with regard to her trial preparation.
Next, Spence asserts that his trial counsel was ineffective in failing "to rebut the state's claim that a threat of force was made[.]" However, the defense theory of the case was that no rape had occurred. This implicitly refuted any assertion of threat of force by the prosecution. Spence testified that he only kissed the victim and, when he was asked "Did you try to force yourself on her?," he responded "No, I did not." Accordingly, this Court concludes that Spence's counsel did rebut the state's assertion that force was used, however, the finder of fact did not find this testimony persuasive. Therefore, this Court can not conclude that Spence's trial counsel was ineffective in this regard.
Spence argues that his trial counsel was ineffective for failing to make a motion for acquittal at the close of the state's case. See Juv.R. 29. However, Spence has failed to demonstrate that he was prejudiced; Spence has not alleged that but for counsel's errors the result of the trial would have been different. In the first assignment of error, this Court determined that Spence's conviction was not against the manifest weight of the evidence. Accordingly, there was sufficient evidence to support his conviction. See State v. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported (holding that "[b]ecausesufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis sic.)). Accordingly, this Court can not find Spence's counsel ineffective in failing to move for a judgment of acquittal.
Lastly, Spence asserts that his trial counsel erred in stipulating that the police detective was an expert. However, Spence fails to assert how this was error, where in the record it occurred, or cite any applicable case law on this issue. This Court declines to address this argument. See App.R. 12(A)(2) and 16(A).
Accordingly, Spence's fourth assignment of error is overruled.
 II.
Spence's four assignments of error are overruled and the judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
___________________________ DONNA J. CARR
BATCHELDER, P. J., WHITMORE, J., CONCUR.
[1] Although Spence's first assigned error only challenges the manifest weight of the evidence, his arguments in support also challenge his adjudication on the basis of sufficiency. However, Spence failed to move for a Juv.R. 29 dismissal, which is analogous to a Crim.R. 29 motion for acquittal. See In re Smith (Sept. 29, 1989), Clermont App. No. CA89-03-012, unreported. This Court has previously held that "[a] defendant may not challenge the sufficiency of the evidence on appeal unless he moved for acquittal at trial." State v. Liggins (Aug. 18, 1999), Summit App. No. 19362, unreported; see, also, State v. Roe
(1989), 41 Ohio St.3d 18, 25. Likewise, the failure to move for a Juv.R. 29 dismissal precludes a sufficiency of the evidence challenge.
[2] As discussed infra, the Rules of Criminal Procedure are not applicable herein.