{¶ 81} I must respectfully dissent, for there has been a wholesale violation of the Ohio Rules of Evidence in this matter. Appellant was charged with operating a motor vehicle under the influence of alcohol. At the time of arrest, appellant refused to submit to a breath test, and, therefore, at trial there was no scientific evidence of her level of intoxication.
 {¶ 82} At trial, the arresting officer went directly to the issue at hand when he testified, over objection, that based upon his field sobriety tests the driver "will blow over a point one." Thus, there is no question that Officer Sackett was testifying as an expert with not even a minimal attempt by anyone to qualify him as such. He cannot testify as an expert unless and until he has been established as an expert by the court.[6] The record clearly demonstrates that the officer was NOT an expert on the NHTSA Standards. The trial court had already ruled that the NHTSA manual could not be admitted because no one had beenqualified as an expert on the standards. You cannot have it both ways. Either he was an expert, and the manual is admissible through his testimony; or he is not an expert, and both his testimony and the manual are excluded.
 {¶ 83} Further, his testimony was clearly hearsay.[7]
As the trial court noted, "[w]ell, of course, everything the officer learned could be identified as hearsay because he didn't * * * come to those conclusions on his own. What he learned and has put into practice could be identified as hearsay." The trial court permitted Officer Sackett to state the opinion of an unidentified source who, at some unknown point in time, arrived at the speculative conclusion that a certain percentage of individuals who exhibit a certain number of clues on a particular field sobriety test will have a breath-alcohol level in excess of point one. Presumably, this information was published in the NHTSA manual, but the record does not inform us for certain.
 {¶ 84} In addition, the reliability of Officer Sackett's testimony is extremely troubling due to the fact it is entirely based upon speculation. Officer Sackett testified that when four clues are present on the horizontal gaze nystagmus test, there is "a 77 percent chance the person will blow over a point one." Similarly, he testified that when two or more clues are present on the one-leg stand test, there is "a 65 percent chance that the defendant will blow over a point one." Such testimony is equivalent to a police officer testifying, in a murder case, "a homicide book says there is a 70 percent chance the killer is related to the victim," when a husband is on trial for his wife's murder. The point is, even assuming the veracity of the statistics Officer Sackett testified to, what is to preclude appellant from being in the 23rd or 35th percentile — who wouldnot blow over point one? Convictions should not be based on statistical probabilities.
 {¶ 85} Finally, perhaps the greatest problem with this testimony is that it permitted the jury to blur the distinction between driving a motor vehicle under the influence of alcohol ("DUI") offenses. In Ohio, there are two ways to violate the DUI statute. One is a "per se" violation and occurs if a person is operating a motor vehicle and the alcohol content of the person's breath, blood, or urine is above a certain limit.[8] The second violation occurs when an individual is operating a motor vehicle "under the influence" of alcohol.[9] In this matter, there was no evidence regarding the alcohol concentration in any of appellant's bodily fluids. To sustain a conviction, the state was permitted to use Officer Sackett's observations, including those from the field sobriety tests, to demonstrate that appellant was "under the influence" of alcohol.[10]
That was the only violation of the DUI statute that appellant was charged with. She was not charged with a "per se" violation for having a prohibited alcohol content. Accordingly, Officer Sackett's speculative testimony regarding appellant's possible breath-alcohol content was entirely improper, as it could only confuse the jury regarding the two, distinct DUI offenses in Ohio.
 {¶ 86} In this case, the police officer served as a walking scientific-testing machine and jury all in one. He looked at the driver, gave field sobriety tests, and pronounced her "over a point one." The Ohio Rules of Evidence require greater precision than this officer was able to afford.
 {¶ 87} Appellant's convictions should be reversed, and this matter should be remanded for a new trial.
[6] See, e.g., State v. Boston (1989), 46 Ohio St.3d 108,118.
[7] Evid.R. 801(C).
[8] R.C. 4511.19(A)(2)-(7). (This statute has since been renumbered.)
[9] R.C. 4511.19(A)(1). (This statute has since been renumbered.)
[10] See State v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37, syllabus.