[Cite as *State v. Terry*, 2020-Ohio-6872.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                            Court of Appeals No. L-19-1082

      Appellee                                      Trial Court No. CR0201801636

v.

Joel Terry                                              **DECISION AND JUDGMENT**

      Appellant                                    Decided:  December 23, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Sarah Thomas Kovoor, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} This matter is before the court on appeal from the judgment of the Lucas County Court of Common Pleas, which, after a jury returned a guilty verdict on five counts of rape, sentenced appellant Joel Terry to an aggregate prison sentence of 75 years to life.  Finding no error, we affirm.

## II. Facts and Procedural Background

{¶ 2} Appellant was convicted of raping his daughter, M.T., arising from incidents in 2017 and 2018. The victim, M.T., complained of appellant improperly touching her on three separate occasions in 2016, 2017, and 2018, prompting M.T.'s mother to take her for treatment each time. Each time, a sexual assault nurse examiner (SANE nurse) documented findings consistent with sexual abuse. M.T.'s teacher also noted concerning behavior relative to the 2018 incident, and after M.T. told her that her father hurt her, the teacher reported the 2018 incident to police.

{¶ 3} On April 11, 2018, appellant was charged with five counts of rape in violation of R.C. 2907.02(A)(1)(b) and (B), with a finding that the victim was less than ten years of age. Counts 1 and 2 alleged sexual conduct on or about March 5, 2017. Counts 3, 4, and 5 alleged sexual conduct on or about March 31, 2018. Appellant entered a not guilty plea to all charges, and prior to trial, consented to a stipulated polygraph examination.

{¶ 4} The matter proceeded to a three-day jury trial beginning March 12, 2019. The state introduced testimony of the two SANE nurses who examined M.T. in 2017 and 2018. The state also introduced testimony from M.T.'s teacher over appellant's hearsay objection regarding M.T.'s claims of abuse. Additionally, the state introduced testimony from investigators, including the state's polygrapher. Appellant also took the stand, and while he acknowledged that M.T. had been abused, he denied he was the one who abused her.

2.

{¶ 5} SANE nurse Melissa Smith testified that she examined M.T. on March 5, 2017, when M.T. was seven years old.  As part of her examination, Smith took an oral history.  M.T. told Smith that her private part hurt after appellant touched her there with his private part.  Smith's physical exam revealed physical, vaginal injury, consistent with the sexual contact described by M.T.  The state admitted certified copies of the medical records without objection by appellant.

{¶ 6} SANE nurse Marcia VanDusen testified that she examined M.T. on September 18, 2016, and then again on April 4, 2018.  VanDusen indicated that M.T. recognized her in 2018 as the nurse who examined her in 2016, and testified regarding the 2016 exam, with no objection by appellant.  On September 18, 2016, M.T. came to the hospital complaining of pain when she urinated, and M.T.'s mother indicated M.T. expressed a desire to kill herself.  M.T. told VanDusen that appellant put his "private part," identified as his penis, into her private area, pointing to her vagina and butt. VanDusen performed a physical examination which indicated vaginal injury, consistent with M.T.'s account.[1]

{¶ 7} In 2018, when M.T. was eight years old, VanDusen examined M.T. a second time.  M.T. told VanDusen that appellant followed her into the bathroom and had her take

---

[1] Appellant did not object to the relevancy of this testimony, but instead, testified himself regarding the 2016 abuse, along with his belief that M.T. was abused by a six-seven year-old boy who shared a babysitter with M.T.  The state previously sought to preclude all evidence of prior sexual abuse by seeking an order in limine to preclude anticipated testimony, elicited by appellant, that M.T. "was sexually abused by another individual" to impeach M.T.'s credibility.

3.

her pants off. Then, M.T. indicated, appellant took off his pants, started "humping" her, and put his penis in her vagina. Because M.T. indicated the assault occurred within 96 hours, VanDusen collected a rape kit from M.T. VanDusen's physical examination of M.T. indicated vaginal injury, including redness and tearing, consistent with M.T.'s account. M.T. also had a urinary tract infection, which VanDusen indicated was not typically found in children, but might occur in cases of sexual abuse.[2] The state admitted certified copies of the medical records for the 2016 and 2018 examinations without objection by appellant

{¶ 8} M.T.'s teacher, Leanne Little, also testified regarding the 2018 incident. Appellant objected to Little's testimony, contending M.T.'s comments were hearsay, and admission of M.T.'s comments would violate his confrontation rights. The trial court determined Little's testimony was admissible, because M.T.'s statements were elicited to address an ongoing emergency, and M.T.'s statements were not testimonial, for purposes of the Confrontation Clause, citing *Ohio v. Clark*, 576 U.S. 237, 135 S.Ct. 2173, 192 L.Ed.2d 306 (2015) in support.

{¶ 9} Little testified that she is a special education teacher and taught the emotionally disturbed class. She has experience with a wide range of issues her students, including M.T., might experience. Little noticed M.T. exhibiting more signs of

---

[2] Additionally, VanDusen testified that she gave M.T. an antibiotic and treatment for gonorrhea and chlamydia, with no testimony that M.T. had either gonorrhea or chlamydia.

emotional disturbance than usual prior to spring break of 2018. She testified that M.T. was acting more aggressively than was typical and behaving in a more sexually-charged manner. Furthermore, Little indicated that M.T. inappropriately touched other students and simulated oral sex with bananas and tubes of yogurt. Little first talked to M.T. just before school recessed for spring break, and M.T. said appellant had touched her. Little took M.T. to the counselor, and M.T. repeated the account. Little reported the incident to Lucas County Children Services (LCCS).

{¶ 10} M.T. returned to school after spring break and Little observed additional, concerning behavior. During the school day, Little found M.T. sitting under the teacher's desk with her hands in her pants. When Little asked M.T. about it, M.T. indicated her privates hurt and that appellant had touched her there. M.T. also told Little that appellant put his mouth on her privates, pointing to her genital area. Little reported this incident to LCCS as well.

{¶ 11} The state next presented testimony of Allison Gapinski, a Bureau of Criminal Investigation forensic scientist who performed DNA testing. Gapinski tested vaginal and anal swabs from the 2018 rape kit, and also tested samples taken from M.T.'s underwear. Gapinski identified only M.T.'s DNA from the rape kit samples, but noted the four-day time period between the incident and the collection of the rape kit may have been a factor in the lack of any results. Gapinski detected a mixture of DNA from an underwear sample indicating M.T. and a male contributor, but she could neither identify

5.

nor exclude appellant as the contributor for that additional DNA based on insufficient interpretable data.

{¶ 12} Finally, the state presented testimony of Steven Stechschulte, a polygraph examiner for the Ohio Attorney General's office who administered the stipulated polygraph test to appellant. Stechschulte provided background on his methods and procedure. He administered the test to appellant on November 19, 2018, pursuant to the signed stipulated agreement, and testified that appellant's responses to questions regarding the rape allegations were deceptive. On cross-examination, Stechschulte acknowledged that polygraphy is not a generally accepted science, and the method he employed has an accuracy rate of 93 percent.

{¶ 13} M.T.'s older half-sister, S.J., testified for the defense pursuant to a subpoena. At the time of trial, S.J. was a senior in high school. M.T. and S.J. share the same mother, and although appellant is not S.J.'s father, S.J. testified that appellant was the only father she had known, and she loved him as her father. As to the incident in 2018, S.J. indicated she let appellant into the home and then went to her room, leaving appellant alone with M.T. for about one-half hour. As appellant was leaving, he called to S.J. to lock the door behind him. S.J. testified that the house was very small, and that she heard nothing to concern her and was unaware of anything that may have occurred between appellant and M.T. S.J. also indicated that appellant never touched her inappropriately and she had no knowledge of any instances in which appellant abused M.T.

6.

{¶ 14} Appellant testified in his own defense, denying he ever harmed M.T. He acknowledged that M.T. sustained the injuries claimed, admitting sexual abuse occurred, but maintained someone else hurt her. Appellant testified regarding the 2016 incident, stating he heard rumors that someone hurt M.T., and he investigated, with those efforts limited to asking M.T.'s mother for details and suspecting a younger boy at M.T.'s babysitter.[3] Much of appellant's direct testimony focused on his belief that LCCS had cleared him of the 2016 abuse, or forensic tests that did not directly implicate him in any rapes. He also testified regarding his theory that M.T.'s mother wished to frame him because he had fathered a child with another woman in 2017.

{¶ 15} Appellant testified that he spoke to a LCCS worker once in 2017, and believed they had closed the 2016 case after finding "nothing on it." On cross-examination, he denied receiving a subsequent communication from LCCS indicating allegations of sexual abuse and claimed he never read the letter sent by law enforcement, despite agreement the letters were addressed to him at his address. He further admitted that the investigating officer sought to interview him, but he never followed up. As to his theory that M.T.'s mother accused him out of spite, he acknowledged that his relationship with M.T.'s mother did not deteriorate until after the 2016 and 2017 incidents.

{¶ 16} After deliberations, the jury returned a guilty finding as to all charges, and returned an additional finding that the victim was under the age of ten years as to each

---

[3] S.J. provided babysitting services for M.T. and several of appellant's young cousins.

7.

count. The trial court sentenced appellant to a prison term of life with parole eligibility after 15 years as to each count, ordered the sentences to run consecutively, and found appellant to be a Tier III sex offender. This appeal followed.

## III. Assignments of Error

{¶ 17} Appellant challenges his conviction, asserting the following assignments of error:

Assignment No. 1: The trial court erred in allowing into evidence SANE Nurse testimony that was truth propensity testimony in disguise in violation of Evid.R. 702 as well as U.S. Const. Amend VI and XIV.

Assignment No. 2: The trial court erred in allowing into evidence three recapitulations of a child witness's narrative in violation of U.S. Const. Amend VI and XIV.

Assignment No. 3: The trial court erred in allowing a conviction in the face of insufficient evidence in violation of U.S. Const. Amend VI XIV

## A. Analysis

{¶ 18} Appellant raises evidentiary challenges, and also argues insufficiency of evidence to support a conviction. As to his evidentiary challenges, appellant concedes that he failed to object, in part, permitting only plain error review of the SANE nurse testimony while preserving error as to the teacher testimony. We address appellant's assignments of error in order.

8.

## 1. SANE Testimony

{¶ 19} In his first assignment of error, appellant argues that the trial court's admission of "truth propensity testimony" by the SANE nurses, Smith and VanDusen, constituted plain error and violated his Confrontation Clause rights under the Sixth and Fourteenth Amendments of the United States Constitution. In order to find plain error, the error must be obvious, and it must have been determinative of the outcome of the trial. *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 65, citing *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 181 (additional citations omitted).

{¶ 20} Appellant characterizes the testimony by Smith and VanDusen as beyond the medical testimony permitted under Evid.R. 702, with the witnesses acting merely as a "conduit for M.T.'s statements during a forensic interview." Appellant further argues that VanDusen provided testimony unrelated to medical treatment, "nearly a year after the alleged event." This argument mischaracterizes the testimony, and misapplies Evid.R. 702.

{¶ 21} Pursuant to Evid.R. 702(A) and (B), a witness, having the requisite "knowledge, skill, experience, training, or education regarding the subject matter" may offer expert opinion testimony regarding "matters beyond the knowledge or experience possessed by lay persons[.]" In this case, both Smith and VanDusen testified regarding their treatment of M.T., but appellant appears to argue, without relevant authority, that Evid.R. 702 limited testimony to only medical observations.

9.

**{¶ 22}** Smith testified she treated M.T. in 2017. VanDusen testified she treated M.T. in 2018. Additionally, VanDusen noted that she had treated M.T. on a prior occasion, in 2016. Appellant does not argue that Smith and VanDusen were not qualified to testify as experts, but instead argues that they improperly introduced M.T.'s statements as evidence under the guise of expert, medical testimony. Both Smith and VanDusen testified regarding their respective examinations in 2017 and 2018, identifying physical findings indicating sexual abuse, and including M.T.'s statements, elicited as part of the patient history, taken for purposes of diagnosis and treatment.

**{¶ 23}** These same patient history statements, now challenged on appeal, were included in the medical records separately authenticated and admitted pursuant to R.C. 2317.422, without objection by appellant. Furthermore, contrary to appellant's argument, Evid.R. 702 does not preclude these statements, as M.T.'s statements, made for the purpose of medical diagnosis and treatment, are admissible as a hearsay exception under Evid.R. 803(4). *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 56.

**{¶ 24}** We have previously found such statements admissible and proper in child-rape prosecutions. *See, e.g., State v. McGovern*, 6th Dist. Erie No. E-08-066, 2010-Ohio-1361, ¶ 37 (victim's statements, including the identity of the perpetrator, admissible as pertinent to diagnosis and treatment under Evid.R. 803(4)). The law is clear, moreover, that statements made for purposes of medical diagnosis and treatment "are not even

remotely related to the evils that the Confrontation Clause was designed to avoid."
(Citation omitted.) *Muttart* at ¶ 63.

{¶ 25} The Sixth Amendment Confrontation Clause provides the accused the right
to confront witnesses against him. (Citations omitted.) *State v. Arnold*, 126 Ohio St.3d
290, 2010-Ohio-2742, 933 N.E.2d 775, ¶ 12. In *Crawford v. Washington*, 541 U.S. 36,
124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court determined
that only testimonial, out-of-court statements implicated this right. *Arnold* at ¶ 13, citing
*Crawford*, 541 U.S. at 52, 124 S.Ct. 1354, 158 L.Ed.2d 177 (additional citations omitted).
An out-of-court statement is nontestimonial when the primary purpose of questioning is
to meet an ongoing emergency, and testimonial when the primary purpose is to gather
evidence relevant to a criminal prosecution. *Arnold* at ¶ 16, citing *Davis v. Washington*,
547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006) (additional citation omitted).

{¶ 26} In challenging admission of M.T.'s statements, appellant limits his
argument to the requirements of Evid.R. 702, characterizing the SANE nurses' testimony
as inadmissible opinion of M.T.'s veracity. Opinion regarding the veracity of a child-
victim is not admissible. *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989),
syllabus. However, appellant cites to no testimony in the record demonstrating testimony
regarding M.T.'s truthfulness. He also fails to challenge those same statements, admitted
as part of the medical record. As to any Confrontation Clause violation, appellant
generally argues M.T.'s statements violated his rights to cross-examine witnesses against
him, but his argument that Smith and VanDusen acted as mere conduits for M.T.'s

11.

narrative statements, without any physical findings of sexual abuse, lacks support in the record.

{¶ 27} Accordingly, upon review of the record, we find no error, let alone plain error, in the admission of the SANE nurses' testimony regarding M.T.'s statements, admitted pursuant to Evid.R. 803(4). Appellant's first assignment of error is not well-taken.

**2. M.T.'s Statements**

{¶ 28} In his second assignment of error, appellant argues the trial court erred in letting Smith, VanDusen, and M.T.'s teacher, Little, repeat M.T.'s statements made as part of her SANE examination and made at school as a "recapitulation [that] came into evidence in violation of the Sixth Amendment." Because M.T.'s words were passed through Smith, VanDusen, and Little, appellant argues, he was unable to confront his accuser at trial.

{¶ 29} We previously addressed the testimony of Smith and VanDusen, and found no error, as both Smith and VanDusen took M.T.'s statements as part of her medical history and those statements matched the physical findings in the SANE examinations. As to Little's testimony, the trial court permitted M.T.'s teacher to testify over appellant's objections at trial, noting the controlling authority of *Ohio v. Clark*, 576 U.S. 237, 135 S.Ct. 2173, 192 L.Ed.2d 306 (2015). In *Clark*, the United States Supreme Court determined that statements regarding abuse to a teacher, in the context of identifying and

12.

addressing a threat, were not testimonial and therefore not barred by the Confrontation Clause. *Clark* at 246-247.

{¶ 30} Appellant argues that the statements, in this case, are distinguishable from *Clark*, because in *Clark*, the teacher observed an injury while Little did not. However, this characterization of the circumstances is not accurate. Little testified that she observed an escalation in M.T.'s behaviors and M.T. complained of pain in her genital area. While the manifestation of abuse presented differently in this case, compared to the bruising and injuries in *Clark*, it is clear that Little observed behaviors requiring an immediate response, and Little questioned M.T. in order to identify and end a threat to M.T.

{¶ 31} Only testimonial statements implicate the Confrontation Clause. *Crawford*, 541 U.S. at 52, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177. Statements made to a teacher regarding abuse, in the context of questions to address the threat, are not testimonial. *Clark* at 246-247. By arguing a lack of any threat, based on a lack of bruising or visible, physical injury, appellant attempts to cast M.T.'s statements as testimonial, given in response to questions asked primarily to create evidence against appellant. The record, however, demonstrates Little's primary purpose in questioning M.T. was to ascertain the reason for M.T.'s behavior and identify the source of M.T.'s pain and discomfort. Accordingly, we find the authority of *Clark* applies, and the trial court properly admitted the testimony, pursuant to *Clark*. Appellant's second assignment of error is not well-taken.

13.

### 3. Sufficiency

{¶ 32} In his third and final assignment of error, appellant challenges the sufficiency of evidence to support a conviction, specifically challenging the evidence to support each separate rape conviction beyond a reasonable doubt.

{¶ 33} A sufficiency challenge tests the adequacy of the evidence, and presents a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing this challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Smith,* 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1997), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 34} Appellant focuses on the forensic evidence and the SANE nurse testimony as failing to demonstrate five, separate counts of rape. Considering all the testimony, however, there is evidence demonstrating vaginal and anal penetration in 2017, and oral, vaginal, and anal penetration in 2018. As to the 2017 incidents, Smith testified that M.T. told her appellant touched her with his "private part" in her "privates" and her booty, and the examination indicated physical injury to her vagina. As to the 2018 incidents, Little testified that M.T. complained of appellant hurting her "privates" and putting his mouth on her "privates," pointing to her vagina. VanDusen testified that M.T. also indicated appellant had put his "no-no part" into her "no-no part," clarifying that appellant's "no-no

14.

part" was that part of appellant that "stuck out," indicating with a gesture that appellant placed his penis in her vagina. M.T. also told her school counselor that appellant also put his penis in her "booty hole," with testimony indicating M.T. referred to her anus as her "booty hole."

{¶ 35} Based on the record, the state presented evidence as to five, separate incidents of rape. Construing this testimony most favorably for the prosecution, we find the evidence was sufficient to support convictions on all five counts of rape. Appellant's third assignment of error, accordingly, is not well-taken.

## IV. Conclusion

{¶ 36} For the forgoing reasons we affirm the judgment of the Lucas County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                                           _____
                                                                             JUDGE

Christine E. Mayle, J.

                                           _____
Gene A. Zmuda, P.J.                                       JUDGE
CONCUR.

                                           _____
                                                                             JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.